**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**Jesse FITZGERALD, Defendant-Appellee.**

**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**DuWayne ROMENESKO and Evelyn
Romenesko, Defendants-Appellees.**

Nos. 75–1467, 76–1057.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 23, 1976.

Decided Nov. 3, 1976.

Rehearing Denied Dec. 7, 1976.

John R. Wilks, U. S. Atty., Andrew B. Baker, Jr., Asst. U. S. Atty., Hammond, Ind., Scott P. Crampton, Asst. Atty. Gen., Tax Div., Dept. of Justice, Washington, D. C., for plaintiff-appellant in No. 75–1467.

Martin H. Kinney, Merrillville, Ind., for defendant-appellee in No. 75–1467.

William J. Mulligan, U. S. Atty., William E. Callahan, Jr., Asst. U. S. Atty., Milwaukee, Wis., Scott P. Crampton, Asst. Atty. Gen., Tax Div., Dept. of Justice, Washington, D. C., for plaintiff-appellant in No. 76–1057.

Robert E. Meldman, Nelson S. Weine, Milwaukee, Wis., for defendants-appellees in No. 76–1057.

Before SWYGERT and PELL, Circuit Judges, and CAMPBELL, Senior District Judge.[1]

SWYGERT, Circuit Judge.

These cases present the question of whether statements taken by Internal Revenue Service agents from a person suspected of criminal violations of the tax laws, without the full set of warnings that *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), requires the police to give a defendant in custody, are inadmissible at trial simply because of that fact. We hold that they are not and therefore reverse the orders of both district courts.

In the Spring of 1971 Jesse Fitzgerald was civilly audited and turned his books and records over to the Government at the request of an IRS agent. The auditing agent referred the case to the Intelligence Division for criminal investigation in July 1971. In August 1971 that agent, accompanied by a special agent of the IRS, came to Fitzgerald's place of business without giving him prior notice and requested further records. Before making that request, the agents identified themselves and read to him the following warnings from a card:

As a Special Agent, one of my functions is to investigate the possibility of criminal violation of the Internal Revenue Laws, and related offenses. I would like to ask you some questions. However, first I advise you that under the Fifth Amendment to the Constitution of the United States I cannot compel you to answer any questions or submit any information if such answers or information might tend to incriminate you in any way. I also advise you that anything you say may be used against you in any criminal proceedings which may be undertaken. I further advise you that you may, if you wish, seek the assistance of an attorney before responding.

The special agent subsequently called Fitzgerald and asked him to come for an interview at the IRS offices in Gary, Indiana, on November 23, 1971. When Fitzgerald appeared, he was given the same warnings which he had received in August, and was then placed under oath and interrogated for one hour and forty-five minutes.

On the basis of the statements made at the November interview, Fitzgerald was in-

1. The Honorable William J. Campbell, United States Senior District Judge for the Northern District of Illinois, sitting by designation.

dicted on three counts of income tax evasion under 26 U.S.C. § 7201. Prior to trial, he moved to suppress the statements on the ground that the warnings given him were not sufficient under *Miranda* to advise him of his constitutional rights. Specifically, he claimed that he had not been told that he could remain silent, that an attorney could be present at the interview, and that an attorney would be appointed to represent him if he could not afford one. The district court, relying on our decisions in *United States v. Dickerson*, 413 F.2d 1111 (7th Cir. 1969), and *United States v. Oliver*, 505 F.2d 301 (7th Cir. 1975), granted the motion to suppress.

DuWayne and Evelyn Romenesko were civilly audited beginning in August 1970 with respect to their income tax returns for 1968 and 1969. In January 1971 the case was referred to the Intelligence Division of the IRS for investigation of possible criminal liability. On June 8, 1971 a special agent, accompanied by a tax auditor, made an unannounced visit to the Romenesko home. The special agent advised DuWayne Romenesko that he had been assigned to complete the investigation of the Romeneskos' 1968 and 1969 tax returns, and that one of his functions was to investigate the possibility of criminal violations of the tax laws. He further advised Romenesko that under the Fifth Amendment:

> I cannot compel you to answer any questions or to submit any information if such answers or information might tend to incriminate you in any way. I also advise you that anything which you say or any information which you submit may be used against you in any criminal proceeding which may be undertaken. I advise you further that you may, if wish, seek the assistance of an attorney before responding.

He then asked Romenesko if he understood his rights, and Romenesko replied that he did. In the ensuing interview, Romenesko made a number of incriminating statements.

A pair of different special agents visited the Romenesko home on October 17, 1972. One of the agents advised DuWayne Romenesko of his rights in almost the identical language used in the earlier interview. Romenesko again made incriminating statements.

The Romeneskos were indicted in March 1975 and charged with attempted income tax evasion in violation of 26 U.S.C. § 7201. Prior to trial, they moved to suppress the statements made by DuWayne Romenesko during the June 1971 and October 1972 interviews because the warnings given did not comply with *Miranda*. The district court, relying on *Oliver*, granted the motion.

The Government now appeals in both of these cases, contending that the decision of the United States Supreme Court in *Beckwith v. United States*, 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976), which was handed down after each trial judge issued his order, overruled *Dickerson* and *Oliver* and requires reversal of those orders.[2]

### I

In *Dickerson* we held that the apprehension produced in the average citizen by a request from IRS agents to interview him about his taxes was great enough that, if a criminal investigation had been initiated, full *Miranda* warnings were necessary in order to ensure that he could intelligently exercise his Fifth Amendment rights. *See* 413 F.2d at 1114–17. We reaffirmed that holding in *Oliver*, noting that the practical effect of the misapprehensions which a typical taxpayer would have as to the nature of the inquiry, his obligation to respond, and the possible consequences of doing so "was to 'compel' him to provide information that could be used to obtain his conviction in a criminal tax fraud proceeding, in much the same way that placing a suspect under

---

**2.** This opinion has been circulated among all judges of this court in regular active service in view of the overruling of this circuit's decisions in *Dickerson* and *Oliver*. No judge favored a rehearing *en banc*.

physical restraint leads to psychological compulsion." 505 F.2d at 305.

The Supreme Court in *Beckwith* rejected the fundamental premise about the nature of an interrogation by tax agents which underlay our opinions in *Dickerson* and *Oliver*. The Court held that the prophylactic protection of Fifth Amendment rights which the *Miranda* warnings are designed to achieve is only required when "the suspect 'has been taken into custody or otherwise deprived of his freedom in any significant way.'" 425 U.S. at 344, 96 S.Ct. at 1615, *citing Miranda*, 384 U.S. at 477, 86 S.Ct. 1602, 16 L.Ed.2d 694. The Court then held that "[a]n interview with government agents such as the one shown by this record simply does not present the elements which the *Miranda* Court found so inherently coercive as to require its holding." 425 U.S. at 347, 96 S.Ct. at 1616.

The Supreme Court's decision in *Beckwith* must control the outcome of the cases at bar. There is no evidence that Fitzgerald or DuWayne Romenesko were any more in "custody" than Beckwith was. Therefore, full *Miranda* warnings were unnecessary and we must reverse the orders of the district courts. Insofar as *Dickerson* and *Oliver* hold otherwise, they are overruled.

In reversing the orders of the district courts, however, we do not reach the issue of whether these statements were "involuntary" and therefore inadmissible under the due process clause. Both district judges assumed that *Dickerson* and *Oliver* were good law and based their rulings on those cases. Since full *Miranda* warnings were not given to Fitzgerald and DuWayne Romenesko, *Dickerson* and *Oliver* were not satisfied, and the statements had to be suppressed; no finding as to voluntariness was necessary. Accordingly, we cannot consider the issue on this appeal. Any claim that the circumstances surrounding the interrogations of Fitzgerald or DuWayne Romenesko overbore their "will to resist" and produced statements "not freely self-determined," *see Beckwith*, 425 U.S. at 347–48, 96 S.Ct. 1612, should properly be addressed to each district court on remand.

II

The Romeneskos contend that even if *Beckwith* overruled *Dickerson* and *Oliver*, it should not be applied retroactively to their case. This argument must fail because these cases, where a change in the law has occurred between the date on which the lower courts ruled and the date on which that ruling was considered by us on direct appeal, do not involve a true question of retroactivity. It is well established that when a lower court relies on a legal principle which is changed by a treaty, statute, or decision prior to direct review, an appellate court must apply the current law rather than the law as it existed at the time the lower court acted. "Intervening and conflicting decisions will thus cause the reversal of judgments which were correct when entered." *Vandenbark v. Owens-Illinois Co.*, 311 U.S. 538, 543, 61 S.Ct. 347, 350, 85 L.Ed. 327 (1941). *See also United States v. Schooner Peggy*, 5 U.S. (1 Cranch) 103, 108–10 (1801); Note, *Prospective Overruling and Retroactive Application in the Federal Courts*, 71 Yale L.J. 907, 912–15 (1962).

We therefore must apply *Beckwith* to the cases at bar. Whether *Beckwith* should be applied to cases where all avenues of direct appeal have already been pursued is a genuine question of retroactivity which we do not reach.

Reversed.

### On Consideration of the Petition for Rehearing.

The petition for rehearing filed by defendants DuWayne and Evelyn Romenesko raises issues which are troublesome enough to warrant some elaboration of Part II of the opinion. We believe this additional explanation is in order so as to alleviate any confusion that may have been caused by the brevity of Part II.

The opinion was bottomed on the concept, established since *United States v. Schooner Peggy*, 5 U.S. (1 Cranch) 103, 108–10, 2 L.Ed.2d 49 (1801), that when a lower court relies on a legal principle which is changed

by a treaty, statute, or decision prior to direct review, an appellate court must apply the current law rather than the law as it existed at the time the lower court acted. The petition for rehearing points out that the Supreme Court has on a number of recent occasions held that a newly announced constitutional rule need not be applied in cases where trials had already commenced. The petition urges that we therefore are not bound by the rule of *Schooner Peggy* and should make our own determination as to the retroactivity of *Beckwith v. United States,* 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976).

■■■ This assertion is incorrect. When the Supreme Court holds that a new rule of law should be applied only prospectively, it is itself delineating the substantive scope of that rule. As a conceptual matter, the Court is holding that its new rule is not the law with respect to cases that have already been initiated. In contrast, when the Supreme Court announces a new rule of law after a district court has ruled but before a court of appeals has passed on a case, the court of appeals can place no such substantive limitation on the scope of the new rule. If the Supreme Court fails to limit the substantive scope of its new rule to purely prospective cases, the court of appeals as an inferior court must assume that the rule applies in all situations. The policy factors that the Supreme Court relies on in determining whether its rule should have merely prospective effect are irrelevant, though they would not be if the court of appeals were determining whether to give retrospective effect to a new rule which it had itself announced. *See Linkletter v. Walker,* 381 U.S. 618, 625–29, 85 S.Ct. 1731, 12 L.Ed.2d 295 (1965), the leading case relied on in the petition for rehearing, where the Supreme Court distinguished the *Schooner Peggy* doctrine and the ability of a court or legislature to make a rule that it has itself constructed purely prospective.

■■■ Moreover, the Supreme Court has recently affirmed the viability of the *Schooner Peggy* doctrine. In *Thorpe v. Durham Housing Authority,* 393 U.S. 268,

281–82, 89 S.Ct. 518, 526, 21 L.Ed.2d 474 (1969), the Court held that an appellate court confronted with a change in the law "must apply the law in effect at the time it renders its decision," whether the change was constitutional, statutory, or judicial. Furthermore, this principle governs whether or not the new law is made specifically applicable to pending cases. *See Bradley v. Richmond School Board,* 416 U.S. 696, 711–16, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974).

Accordingly, we reaffirm the holding and logic of Part II of the opinion. *Beckwith* must be applied to the cases at bar. The petition for rehearing is denied.

PELL, Circuit Judge (concurring).

While I concurred in the original opinion written by Judge Swygert and also concur in the result reached in the present denial of rehearing, I think it appropriate to add that I have serious doubts in any event that this is a proper case for a defendant to raise a question regarding retroactivity. The usual and ordinary case in which this question is involved is that in which a new constitutional protective principle is laid down. It is of substantial significance to a criminal defendant to determine whether the newly enunciated principle is effective timewise and otherwise applicable to the facts of his case.

*Dickerson* purported to establish a new protective rule of constitutional proportions which was the law of this circuit for several years. *Beckwith,* as I read it, did not establish a new rule but in effect stated that *Dickerson* and *Oliver* were never good constitutional law. I have difficulty therefore in perceiving any merit in a defendant relying on a principle or rule which was never the law of the land, that being the only law which this circuit, as well as any other courts in our system, should in final analysis apply.