STATE of Alaska, Petitioner,

v.

Theodore GLASS, Respondent.

STATE of Alaska, Petitioner,

v.

Michael THORNTON, Respondent.

James W. ALDRIDGE, Appellant,

v.

STATE of Alaska, Appellee.

Thomas Lee COFFEY, Appellant,

v.

STATE of Alaska, Appellee.

Nos. 3565, 3764, 2965 and 3002.

Supreme Court of Alaska.

May 25, 1979.

David C. Backstrom, Deputy Public Defender, and Brian Shortell, Public Defender, Anchorage, for respondents Theodore Glass and Michael Thornton.

James H. Cannon, Johnson, Christenson, Shamberg & Glass, Inc., Fairbanks, for appellant James W. Aldridge.

Robert Merle Cowan, Kenai, Walter Share, Asst. Public Defender, Anchorage, for appellant Thomas Lee Coffey.

Dean J. Guaneli, Patrick J. Gullufsen, Asst. Attys. Gen., Daniel W. Hickey, Chief Prosecutor, James L. Hanley, Asst. Dist. Atty. and Avrum M. Gross, Atty. Gen., Juneau, for appellee and petitioner.

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, BURKE and MATTHEWS, JJ.

## OPINION ON REHEARING

BOOCHEVER, Chief Justice.

In *State v. Glass*, 583 P.2d 872 (Alaska 1978), we held that warrantless electronic monitoring of a conversation between a police informant and a defendant violated the defendant's right of privacy and freedom from unreasonable searches and seizures under the Alaska Constitution. On January 15, 1979, after considering supplemental briefs by the parties, we issued an order, with opinion to follow, stating what cases would be governed by *Glass*. *State v. Glass*, 583 P.2d 872 (Alaska 1978), *State v. Thornton*, 583 P.2d 886 (Alaska 1978), *Aldridge v. State*, 584 P.2d 1105 (Alaska 1978), and *Coffey v. State*, 585 P.2d 514 (Alaska 1978), are governed by the new ruling. Apart from those cases, the *Glass* decision will apply prospectively to activity occur-

ring on or after September 15, 1978, the date of the decision.[1]

█ If a decision simply applies an established rule of law, even if in a new factual situation, the question of retroactivity does not arise. The question of retroactivity arises only when a court announces a new rule of law. *Milton v. Wainwright*, 407 U.S. 371, 381 n. 2, 92 S.Ct. 2174, 2180, 33 L.Ed.2d 1, 9 n. 2 (1972) (Stewart, J., dissenting); *Desist v. United States*, 394 U.S. 244, 247–48, 89 S.Ct. 1030, 1032, 22 L.Ed.2d 248, 254, *rehearing denied*, 395 U.S. 931, 89 S.Ct. 1776, 23 L.Ed.2d 251 (1969).

This court had not previously decided, or even discussed, whether a warrant requirement applied to participant monitoring, but most federal and state decisions, including the plurality decision by the United States Supreme Court in *United States v. White*, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453, *rehearing denied*, 402 U.S. 990, 91 S.Ct. 1643, 29 L.Ed.2d 156 (1971), had not imposed such a requirement.[2] Defendants point to law review articles discussing the increasing independence of state courts, and past decisions of this court interpreting our state constitutional guarantees, specifically the right to privacy, more broadly than federal guarantees. They argue that the law enforcement community should have foreseen that Alaska would adopt a warrant requirement and add that the police should be encouraged to obtain warrants in

borderline cases. While we agree with the latter argument as a general proposition, we decline to require police departments and prosecutors to monitor the general trends noticed in law review commentary and to assume, on a question of first impression in this state, that this court will interpret our constitution in a specific manner, in the absence of clear authority so construing a similar constitutional provision. Thus, our holding in *Glass* represents a new rule of law, and we must examine what cases that new rule will govern.

The state acknowledges that defendant Glass should receive the benefit of the new rule. Its brief states:

It is clear that the benefit of the new rule is given to the defendant in the declaring decision. . . . [L]itigants have no incentive to proceed if they would not receive the benefit of the new rule.

Although *Thornton, Aldridge* and *Coffey* were not formally consolidated with *Glass*, they were under advisement at the same time and were, in effect, considered by the court as one case. All of the decisions, with the exception of *Coffey*, were announced on the same day as *Glass*. *Coffey* was delayed because it dealt with other issues, in addition to participant monitoring.[3] Thus, the applicability of the *Glass* holding to *Thornton*,[4] *Aldridge* and *Coffey* is simply an ex-

1. In arriving at our decision, we considered the detailed arguments urging retroactive application of *Glass* in *Nix v. State* and *Allen v. State*. In both cases, we granted the petitions for review and affirmed the trial court orders refusing to apply *Glass* retroactively. Our decision was based on the order issued in the instant case. *See Nix v. State*, No. 4286 (Alaska, Jan. 15, 1979), and *Allen v. State*, No. 4395 (Alaska, Jan. 15, 1979).

2. In *Glass*, we noted authority to the contrary, which we believe is better reasoned, and also noted that *White* was far from a clearcut holding by the Supreme Court, 583 P.2d at 876–78.

3. Of all the cases, the briefing in *Coffey* was probably the most influential in our holding regarding participant monitoring. In addition to that issue, we evaluated Coffey's arguments concerning pre-indictment delay, speedy trial violation, entrapment, denial of cross-examina-

tion, error in jury instructions and bias of the trial judge. 585 P.2d at 519–26.

4. We note an alternative ground under which *Thornton* would be covered by the *Glass* holding. In *Thornton*, the *state*, not the defendant, petitioned for review of an order granting a motion to suppress. Judge Blair, who heard the suppression arguments in *Thornton*, suppressed the results of the warrantless participant monitoring anticipating, in effect, our holding in *Glass*. In fact, it was Judge Blair, in a "well-reasoned decision," *State v. Glass*, 583 P.2d at 882, who had initially suppressed the tapes in *Glass*, and our decision affirmed his suppression order. Thus, the law, as applied to *Thornton*, has always been in conformity with the *Glass* decision. In *United States v. Dickerson*, 413 F.2d 1111 (7th Cir. 1969), the court gave primarily prospective application to its holding, but noted:

tension of applicability of the rule to defendant Glass.

Any further line we draw will inevitably be somewhat arbitrary. When the law changes, some get the benefit of the change, others do not. When only the named defendant is covered by the new rule, other defendants whose appeals raised the same issue may feel it was simply the vagaries of the court calendar that prevented their case from being the landmark decision. If all cases on direct review receive the benefit, those on collateral review do not. If the court attempts to increase equity between defendants by increasing the coverage of the new rule, it increases the unfairness to society and law enforcement officials who in good faith relied on the law as it was when they acted. We noted in *Judd v. State*, 482 P.2d 273, 278 (Alaska 1971):

> [O]nce one realizes that any decision will involve an arbitrary classification which is not particularly defensible except in terms of its impact, then one has arrived at a starting point for making the necessary policy decisions.

 The constitution does not require that the new rules of law be given retroactive effect, *Linkletter v. Walker*, 381 U.S. 618, 629, 85 S.Ct. 1731, 1737, 14 L.Ed.2d 601, 608 (1965); [5] *Judd v. State*, 482 P.2d at 276, and a court must make an independent decision in each case.[6] In *Judd v. State*, 482 P.2d at 278 (Alaska 1971),[7] we noted the criteria guiding resolution of the question of retroactivity:

> (a) the purpose to be served by the new standards; (b) the extent of the reliance by law enforcement authorities on the old standards; and (c) the effect on the administration of justice of a retroactive application of the new standards. *Linkletter v. Walker*, 381 U.S. 618, 636–638, 85 S.Ct. 1731, 14 L.Ed.2d 601, 612–613 (1965). [footnote integrated into text]

The purpose of the rule in *Glass* is to protect the privacy of Alaskans and the spontaneity of discourse that marks a free society. The tapes in *Glass* were not excluded because of their potential unreliability:

> We exclude the evidence not because it is unreliable but because the transcendent values preserved by constitutional guarantee are of greater societal moment than the use of that evidence to obtain a criminal conviction.

583 P.2d at 878 (citation omitted).

The purpose criteria points quite decisively away from retroactive application of *Glass* :

> favored. In determining retroactivity, however, these policy considerations are not extant. We do not want to encourage people to disregard the law in the expectation that courts will change the law and that the change will be retroactive. Thus, when the issue of retroactivity is concerned, the case-by-case approach is particularly desirable. *See Linkletter v. Walker*, 381 U.S. at 629, 85 S.Ct. at 1737, 14 L.Ed.2d at 608 (1965).

> However, it is not our intent to disturb previously ordered suppressions of evidence anticipating our holding today.

413 F.2d at 1117 (citation omitted). *Dickerson* was impliedly overruled on other grounds by the Supreme Court in *Beckwith v. United States*, 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976), and expressly overruled on those other grounds on the authority of *Beckwith* in *United States v. Fitzgerald*, 545 F.2d 578, 581 (7th Cir. 1976).

5. *Linkletter's* square holding that nothing in the constitution compels retroactive application of new rules answers the equal protection argument advanced by appellant Aldridge. Moreover, since we apply the holding to *Aldridge*, we do not need to address his alarm that other defendants would be denied equal protection if they do not receive the same protections as him.

6. When stability of legal norms and continuity in the application of such norms are the core values to be protected in fashioning a legal rule, general rules of law promoting predictability for those who must rely on the rules are

7. *Judd* examined the retroactive effect of *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685, *rehearing denied*, 396 U.S. 869, 90 S.Ct. 36, 24 L.Ed.2d 124 (1969), which limited the scope of warrantless searches incident to an arrest. We held that the rule of *Chimel* "shall apply to all police searches taking place after the date of the *Chimel* opinion of June 23, 1969." 482 P.2d at 279. Earlier, in *Fresneda v. State*, 458 P.2d 134, 143 n. 28 (Alaska 1969), we held that *Chimel* would be applied to cases on direct review in this court at the time *Chimel* was decided.

A review of the decisions of the Supreme Court of the United States dealing with retroactivity questions indicates that the starting point in analysis is the purpose criterion. Where the purpose of the new rule is primarily related to the integrity of the verdict, the application thereof has generally been extended to all cases.

. . .

On the other hand, where the purpose of a new constitutional standard is not to minimize arbitrary or unreliable fact findings, but to serve other ends, retroactive application has generally been denied.

*Rutherford v. State*, 486 P.2d 946, 952–53 (Alaska 1971) (footnotes omitted).

The exclusion of tape recordings that are the product of warrantless participant monitoring serves two functions. First, it deters the police from monitoring conversations between an informant and a citizen without first obtaining a warrant.[8] This deterrence function cannot be served by applying *Glass* to police conduct occurring before the date of the decision. The second rationale is

the imperative of judicial integrity which requires that the courts not be made "party to lawless invasions of the constitutional rights of citizens by permitting unhindered governmental use of the fruits of such invasions."

*State v. Sears*, 553 P.2d 907, 912 (Alaska 1976) (footnote omitted). The judicial integrity function is not undermined when the police conformed their actions to what was the law when they acted. We stated in *Judd* :

[P]ractical problems [arise] from the undisputed fact that the police, prosecuting agencies and the public have relied upon the previous statements of the law, and that the great impact of and respect for the law in our society is based on such acceptance by the public generally. A change for the future can be digested but the application of a new interpretation to past conduct which was accepted by previous judicial decisions leads us to confusion and a hesitancy to accept any theory except one of gamesmanship with corresponding disrespect for our whole system of laws.

482 P.2d at 278–79 (footnote omitted).

We turn to the second criterion by noting that the fact of reliance by law enforcement officials on pre-*Glass* law was reasonable. Law enforcement officials could not be expected to foresee our ruling in *Glass*, and thus decisions not to seek warrants for participant monitoring were entirely reasonable and in good faith. The extent of law enforcement reliance intermingles with the third criterion, the effect of retroactive application on the administration of justice.

If the rule in *Glass* were given complete retroactivity so that it would apply to cases already completed, the negative effect on the administration of justice would be substantial. *Desist v. United States*, 394 U.S. 244, 251, 89 S.Ct. 1030, 1034, 22 L.Ed.2d 248, 256, *rehearing denied*, 395 U.S. 931, 89 S.Ct. 1776, 23 L.Ed.2d 251 (1969).[9] The state's brief accurately notes:

583 P.2d at 878. We believe that we sufficiently protect free and open discussion by a prospective application of the warrant requirement.

Further, the defendants' argument proves too much. Whenever a decision imposes a warrant requirement, defendants could argue that the use of the evidence, apart from its initial gathering, is a separate harm. However, the criteria for retroactivity recognize that admitting evidence gathered according to then-existing law is not always unfair to the defendant, particularly if the evidence is reliable.

**8.** The defendants argue that both the initial taping and the subsequent use of the tapes in court invade their constitutional rights. We do not perceive the taping and the use as separate constitutional violations. The evil *Glass* addresses is police taping of conversations outside the province of judicial scrutiny:

If . . . law enforcement officials may lawfully cause participants secretly to record and transcribe private conversations [without a warrant], nothing prevents monitoring of those persons not engaged in illegal activity, who have incurred displeasure, have not conformed or have espoused unpopular causes.

**9.** *Desist* held that *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967),

Every case in which conviction may have resulted from tape recorded evidence would have to be reopened and examined. In many cases, evidence will have been lost, memories faded and witnesses unavailable.

The defendants implicitly admit these consequences because they only urge retroactive application of *Glass* to cases pending review at the time of the *Glass* decision.[10] Estimates from the state and the defendants indicate that the prosecution of a number of cases currently in the legal system entails conversations monitored without a warrant.[11] We acknowledge that in these cases, the police informant could testify without the tapes. The tapes may, however, bolster the informant's testimony and we believe that if the police had prior knowledge that *Glass* would become the law, they could have sought and, based upon the facts in most of these cases, could have obtained warrants authorizing the monitoring.[12] We decline to penalize the prosecution under those circumstances.

Based on the purpose behind our ruling in *Glass*, we conclude that the decision, with the exceptions of the four cases previously

noted, will apply prospectively to activity occurring on or after September 15, 1978.[13]

BURKE, J., concurs.

RABINOWITZ, J., with whom CONNOR, J., joins, dissents.

BURKE, Justice, concurring.

I concur in today's opinion on rehearing but wish to state that I still believe strongly that this case was wrongly decided in the first place, for the reasons expressed in my dissent in *State v. Glass*, 583 P.2d 872 (Alaska 1978). That belief is now further strengthened by the holding of the United States Supreme Court in *United States v. Caceres*, —— U.S. ——, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979).

RABINOWITZ, Justice, dissenting.

In *Fresneda v. State*, 458 P.2d 134, 143 n. 28 (Alaska 1969), we held that the constitutional rule announced in *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), was applicable to all cases pending on direct review in this court as of the date of the *Chimel* decision.[1] I am not

---

which rejected the distinction between trespassory searches and those in which there was no physical penetration of the protected premises, would not be given retroactive application. In *Desist*, the court noted:

> [T]he determination of whether a particular instance of eavesdropping led to the introduction of tainted evidence at trial would in most cases be a difficult and time-consuming task, which, particularly when attempted long after the event, would impose a weighty burden on any court.

394 U.S. at 251, 89 S.Ct. at 1035, 22 L.Ed.2d at 256.

**10.** Only appellant Coffey has requested that this court apply *Glass* "purely retroactively." Coffey asks, in the alternative, that *Glass* be applied to all cases pending appellate review.

**11.** An affidavit from Daniel W. Hickey, the state's Chief Prosecutor, states that at least forty-eight cases involve "nonconsensual participant monitoring and/or recording of statements made to an individual now known to be a state agent." The affidavit was based on response to a memorandum sent to all district attorneys throughout the state.

The defendants do not offer a general counterestimate, but the *Nix* petition for review points

to one case involving fifteen defendants in Anchorage, fifteen to twenty individual cases in Juneau, and five to seven cases being handled by the Fairbanks Public Defender. That estimate of cases involving participant monitoring may not include cases being handled by private attorneys. The basis for the estimate is not indicated in the brief.

**12.** *See State v. Glass*, 583 P.2d at 881.

**13.** We note that the Supreme Court of Michigan has held that the rule of *People v. Beavers*, 393 Mich. 554, 227 N.W.2d 511 *cert. denied*, 423 U.S. 878, 96 S.Ct. 152, 46 L.Ed.2d 111 (1975), would not be retroactive. In *People v. Drielick*, 400 Mich. 559, 255 N.W.2d 619, 620 (1977), *cert. denied*, 434 U.S. 1047, 98 S.Ct. 893, 54 L.Ed.2d 798 (1978), the court refused to apply *Beavers*, which prohibited warrantless transmission of a conversation by a participant, to a case on direct review at the time of *Beavers*.

**1.** In reaching this holding, we relied on *Desist v. United States*, 394 U.S. 244, 255–58, 89 S.Ct. 1030, 1037–38, 22 L.Ed.2d 248, 259–61 (1969) (Harlan, J., dissenting); *Linkletter v. Walker*, 381 U.S. 618, 627, 85 S.Ct. 1731, 14 L.Ed.2d 601, 607 (1965); and H. Schwartz, *Retroactivity, Reliability, and Due Process: A Reply to*

persuaded that we should depart from the rule of *Fresneda* and, therefore, would hold that all cases pending in this court on direct review on the date of the *Glass* decision, in which the issue of warrantless electronic monitoring was raised, should be governed by the substantive holdings of *State v. Glass*, 583 P.2d 872 (Alaska 1978).

CONNOR, J., joins in the dissent.

---

*Professor Mishkin*, 33 U.Chi.L.Rev. 719, 762–64 (1966).

Additionally, in *Fresneda v. State*, 458 P.2d 134, 143 n. 28 (Alaska 1969), we observed that the announced rule we adopted dates back to Chief Justice Marshall's opinion in *United States v. Schooner Peggy*, 5 U.S. (1 Cranch) 103, 2 L.Ed. 49 (1801). *See also Lopez v. Bowen*, 495 P.2d 64, 66 n. 7 (Alaska 1972) ("The rationale for the [*Fresneda*] rule on retrospective application is that where several cases are pending on appeal which each present the same issue, the fortuity of which case is first decided should not be determinative of that issue in the other cases.")