**Billy Joe HOWE,**
**Appellant/Cross-Appellee,**

v.

**STATE of Alaska,**
**Appellee/Cross-Appellant.**

**Nos. 4364, 4370.**

Supreme Court of Alaska.

April 25, 1980.

Sue Ellen Tatter, Asst. Public Defender, Brian C. Shortell, Public Defender, Anchorage, for appellant cross-appellee.

Leonard M. Linton, Jr., Asst. Dist. Atty., Larry R. Weeks, Dist. Atty., Anchorage, Avrum M. Gross, Atty. Gen., Juneau, for appellee cross-appellant.

## OPINION

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER, BURKE and MATTHEWS, JJ.

BOOCHEVER, Justice.

Billy Joe Howe appeals from his conviction for robbery. At his trial, Howe relied on an insanity defense. Howe alleges that the trial court committed the following errors: first, the judge improperly denied him the right to have counsel present during a court-ordered psychiatric interview; second, the court improperly excluded as hearsay certain statements made by Howe to a state trooper and the psychiatrist pertaining to his loss of memory; third, the court did not suppress evidence of a show-up; fourth, the court improperly denied him bail pending appeal; and finally, Howe claims his sentence fails to adequately consider the constitutional goal of rehabilitation. The state cross-appeals, contending that the sentence is too lenient. Because of the disposition of the case, it is unnecessary to address the sentence issues. We find it necessary to reverse Howe's conviction and remand for a new trial due to the denial of the right to have counsel present at the court-ordered psychiatric examination. We also find it necessary to discuss the hearsay and show-up issues, as they are likely to arise in any new trial.

## I. THE RIGHT TO HAVE DEFENSE COUNSEL PRESENT AT THE COURT–ORDERED PSYCHIATRIC EXAMINATION

▪ The trial court denied Howe's motion to have his attorney present during a court-ordered examination by the state's psychiatrist. Since the testimony of that psychiatrist played a key role in Howe's conviction, we find it necessary to reverse and remand for a new trial in view of our subsequent decision in *Houston v. State*, 602 P.2d 784, 795–96 (Alaska 1979), holding that a defendant is entitled to have his attorney present during such an examination.[1]

## II. THE SHOW–UP

Howe allegedly exhibited a shotgun to Schmidt, the clerk of the Circle S grocery store in Chugiak, Alaska, and told Schmidt that he was going to rob the store. Schmidt placed $166 and some change into a paper bag and Howe left. Schmidt observed the car turning out towards the Glenn Highway.

Schmidt called the Alaska State Troopers within two minutes of the robbery. The dispatcher put out a bulletin describing the car and its two occupants. Trooper McKillop saw a green Torino matching the description of the car used in the robbery and stopped it. Meanwhile, other troopers were with Schmidt in Chugiak. Officer Hagan was dispatched to the scene of the stop and decided Schmidt should be driven there for identification purposes. Schmidt had heard some of the conversations pertaining to the apprehension of the suspects over a police radio. When Schmidt arrived, there were several police vehicles and men in uniform surrounding Howe's car. Schmidt made a positive identification of the car as the one used in the robbery. Several minutes later, he observed Howe, either sitting in a police cruiser or standing beside it, and made a positive identification of Howe as the man who had robbed him. The identification of Howe apparently took place between two and three o'clock in the morning, approximately one and one-half hours after the robbery.

Howe made a motion to suppress identification of himself at the show-up and all the evidence that allegedly derived from it, including some shotgun shells, a bag of money, and gloves belonging to him. The motion was denied.

▪ The essential question is whether the confrontation "was so unnecessarily suggestive and conducive to irreparable

---

1. Since the finding of Howe's guilt could have been affected by the court's ruling, the considerations which we found persuasive in denying retroactivity to our opinion in *State v. Glass*, 583 P.2d 872 (Alaska 1978), involving surreptitious monitoring of conversations, are not applicable. *See State v. Glass*, 596 P.2d 10 (Alaska 1979) (*on rhg.*).

mistaken identification that [Howe] was denied due process of law." *Stovall v. Denno*, 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199, 1206 (1967). As noted in *Stovall*,

> [t]he practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned.

*Id.* The Court of Appeals for the District of Columbia wrote:

> Doubtless a man seen in handcuffs or through the grill of a police wagon looks more like a crook than the same man standing at ease and at liberty.

*Russell v. United States*, 408 F.2d 1280, 1284 (D.C.Cir.), *cert. denied*, 395 U.S. 928, 89 S.Ct. 1786, 23 L.Ed.2d 245 (1969).

■ Nevertheless, evidence of suggestive pre-trial identification procedures has not been subject to strict exclusionary rules either in the United States Supreme Court or in this court. Suggestiveness alone does not require exclusion. The test is whether, under the totality of the circumstances, the identification is reliable. In *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2252, 53 L.Ed.2d 140, 154 (1977), the Supreme Court held that "reliability is the linchpin in determining the admissibility of identification testimony . . . ." Recently, in *Holden v. State*, 602 P.2d 452 (Alaska 1979), we followed *Manson* and its suggested criteria for determining reliability.[2]

■ Analyzing these factors leads to the inescapable conclusion that the identification of Howe was reliable. Schmidt saw Howe twice under commercial lighting on the evening of the robbery, once when he came to pay for gas and once when he returned to rob the store. Schmidt gave an accurate description of Howe that led police to stop his vehicle within less than an hour of the robbery. He saw Howe again and identified him within less than two hours of the robbery. *See Holden v. State*, 602 P.2d at 456–58. He stated that Howe was the man that robbed him "without a doubt."

We have previously discussed specifically the validity of confrontations arranged by the police between a witness and a suspect shortly after a crime has been committed.[3] Numerous cases from other jurisdictions have held that confrontations between a witness and a possible suspect immediately after a crime has been committed may be necessary so police still have time to pursue the real culprit, or to ensure proper identification when events are still vivid and fresh in the witness's mind.

In *Bates v. United States*, 405 F.2d 1104 (D.C.Cir.1968), an assailant was returned to the scene of a crime about thirty minutes after the crime. The victims identified the suspect while he sat in the back of a patrol car. Chief Justice Burger, then a circuit judge, wrote:

> There is no prohibition against a viewing of a suspect alone in what is called a "one-man showup" when this occurs near the time of the alleged criminal act; such a course does not tend to bring about misidentification but rather tends under

---

**2.** These factors include

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation.

*Holden v. State*, 602 P.2d 452, 456 (Alaska 1979), (quoting *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140, 154 (1977). *See also Viveros v. State*, 606 P.2d 790 (Alaska 1980). The original source for these suggested criteria was *Neil v. Biggers*, 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401, 411 (1972), which has been quoted with

approval in several of our cases. *See, e. g., Gould v. State*, 579 P.2d 535, 537 n.5 (Alaska 1978); *Cox v. State*, 575 P.2d 297, 304 (Alaska 1978).

**3.** The issue was presented in *Gilbert v. State*, 598 P.2d 87, 91–92 (Alaska 1979), but there the court concluded only that the admissibility of identification testimony did not amount to plain error. In *Cox v. State*, 575 P.2d 297 (Alaska 1978), and *Kimble v. State*, 539 P.2d 73 (Alaska 1975), we considered accidental confrontations that occurred between a suspect and a witness several days after the crime. In both cases, we held identification testimony admissible.

some circumstances to insure accuracy. . . . Prudent police work would confine these on-the-spot identifications to situations in which possible doubts as to identification needed to be resolved promptly; absent such need the conventional line-up viewing is the appropriate procedure.

*Id.* at 1106 (footnote omitted).

*Bates* has been widely cited and followed. It has been applied in circumstances where the suspect was first viewed by the victim in a police station,[4] in a police car,[5] in handcuffs,[6] in hospital rooms,[7] at the scene of the crime [8] or at the scene of arrest.[9] The time of the confrontation has varied from a few minutes to several hours after the crime.[10] In one case, a victim heard the description and apprehension of suspects over a police radio in circumstances similar to those here.[11]

██ In short, there is no basis for suppressing evidence of the show-up confrontation in this case both because the identification was reliable, and because it falls within a widely recognized exception to the ordinary requirement for a line-up where the police arrange a show-up immediately in the wake of a crime to promptly eliminate or arrest suspects.[12]

**4.** *State v. Daniels,* 106 Ariz. 224, 474 P.2d 815, 817 (1970); *State v. Williams,* 183 Colo. 241, 516 P.2d 114, 115 (1973).

**5.** *State v. Kress,* 210 Kan. 522, 502 P.2d 827, 829–30 (1972); *Davis v. State,* 13 Md.App. 394, 283 A.2d 432, 435–37 (1971).

**6.** *State v. Middleton,* 170 Conn. 601, 368 A.2d 66, 68–70 (1976).

**7.** *Commonwealth v. Barnett,* 371 Mass. 87, 354 N.E.2d 879, 883 (1976); *State v. Hamblin,* 448 S.W.2d 603, 611 (Mo.1970).

**8.** *Robinson v. State,* 318 So.2d 354 (Ala.Cr.App. 1975).

**9.** *State v. York,* 324 A.2d 758 (Me.1974); *Martin v. Commonwealth,* 210 Va. 686, 173 S.E.2d 794 (1970).

**10.** *Robinson v. State,* 318 So.2d 354, 358 (Ala. Cr.App.1975) (thirty minutes); *Bennefield v. Brown,* 228 Ga. 705, 187 S.E.2d 865 (1972) (two hours); *State v. Torres,* 88 N.M. 574, 544 P.2d 289, 290 (App.1975) (one hour).

## III. OUT–OF–COURT STATEMENTS MADE BY HOWE

In support of his insanity defense, Howe attempted to introduce certain statements made to police officers and to psychiatrist Dr. Wolf, who testified for the defense. In his brief and during extensive argument at trial, Howe maintained that these statements should have come in as substantive evidence of their truth. The state, on the other hand, took the position that the statements could be offered to show the basis for an expert's opinion of Howe's mental condition at the time of the robbery, but not as substantive evidence of their truth. The trial judge finally ruled that the statements could only come in to show the basis for an expert's opinion, and that they did not qualify under any existing hearsay exception. The defense objected to the ruling both on the grounds that the statements should be allowed under a hearsay exception and that the judge's ruling would force Howe to take the stand in his own defense.

██ The question of whether the statements may be admitted into evidence and for what purpose is now controlled by the Alaska Rules of Evidence, which were adopted subsequent to Howe's trial.[13] On

**11.** *Watson v. State,* 349 A.2d 738, 739 (Del. 1975).

**12.** In less than one line, Howe alludes to the possible denial of his right to counsel. He did not argue the point below and we consider it waived. *Wernberg v. Matanuska Elec. Ass'n,* 494 P.2d 790, 794 (Alaska 1972). Moreover, the issue is controlled by our statement in *Blue v. State,* 558 P.2d 636, 642 (Alaska 1977), with reference to a show-up:

[P]roviding a right to counsel at this late hour of the night might have postponed the lineup until the following day. Under these circumstances, providing counsel could have precluded the state's diligent efforts to obtain an identification while the facts were still fresh in the eyewitness' mind. We cannot find that providing counsel under these circumstances is practical, reasonable or mandated by our constitution.

**13.** The order of May 29, 1979, adopting the Alaska Rules of Evidence, stated:

These rules also apply to further procedure in actions, cases and proceedings then pending,

retrial, if the same issues arise, the trial court should be guided by Evidence Rule 803, which provides:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> .   .   .   .   .
>
> (4) *Statements for purposes of medical diagnosis or treatment.* Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.[14]

██ It is also necessary to consider the admissibility of statements made by Howe to police officers on the night of the arrest. Transcripts of these interviews were made available to Dr. Wolf, who relied upon them in evaluating Howe. Although neither the state nor the defense draw any distinction between statements made to the police and statements made to Dr. Wolf,[15] Howe's statements to the police were certainly not made for medical diagnosis or treatment within the meaning of Rule 803(4); therefore, they are not admissible under this exception.

Again, the trial court should be guided by the new rules of evidence if issues concerning statements made to the police arise on retrial.[16]

In view of the necessity of reversing and remanding, we find it unnecessary to rule on the other contentions raised in this appeal.

REVERSED AND REMANDED.[17]

RABINOWITZ, Chief Justice, concurring.

For the reasons set forth in my dissent in *State v. Glass*, 596 P.2d 10 (Alaska 1979), I reach the conclusion that *Houston v. State*, 602 P.2d 784, 795–96 (Alaska 1979), is to be applied in resolving the right to counsel issue raised in the instant case.

---

except to the extent that application of the rules would not be feasible or would work injustice, in which former evidentiary principles apply.

14. The commentary to the Alaska Rules of Evidence states:
> Conventional doctrine has excluded from the hearsay exception, as not within its guarantee of truthfulness, statements to a physician consulted only for the purpose of enabling him to testify. While these statements were not admissible as substantive evidence, the expert was allowed to state the basis of his opinion, including statements of this kind. The distinction thus called for was one most unlikely to be made by juries. The rule accordingly rejects the limitation. This position is consistent with the provision of Rule

703 that the facts on which expert testimony is based need not be admissible in evidence if of a kind ordinarily relied upon by experts in the field.

15. At trial the prosecutor noted this distinction, but the state does not raise it in its brief.

16. The court may wish to refer to the following sections of the Alaska Rules of Evidence, among others: Rule 703, Basis of opinion testimony by experts; Rule 803(3), Then-existing mental, emotional or physical condition; Rule 803(8), Public record and reports.

17. We express no opinion as to whether the retrial should be limited to the issue of insanity, as the possibility of limiting the retrial has not been presented to us or briefed.