Seth W. YERRINGTON, Petitioner,

v.

ANCHORAGE, A Municipal Corporation, Respondent.

No. 7874.

Court of Appeals of Alaska.

Dec. 30, 1983.

R. Stanley Ditus, Anchorage, for petitioner.

James F. Wolf, Asst. Mun. Prosecutor, Allen M. Bailey, Mun. Prosecutor, and Jerry Wertzbaugher, Mun. Atty., Anchorage, for respondent.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION ON REHEARING

SINGLETON, Judge.

In *Copelin v. State*, 659 P.2d 1206, 1208 (Alaska 1983), the supreme court held:

[W]hen a person is arrested for operating a motor vehicle in violation of state or local drunken driving ordinances, and requests to contact an attorney, AS 12.25.-150(b) and Alaska Criminal Rule 5(b) require that the arrestee be afforded a reasonable opportunity to do so before being required to decide whether or not to submit to a breathalyzer test. Where, as here, the arrestee is denied that opportunity, subsequently obtained evidence must be suppressed ....

The sole question in this case is whether the holding of *Copelin* applies to Seth W. Yerrington who was arrested on July 17, 1982, and convicted on November 15, 1982, but whose appeal in the superior court was pending on February 18, 1983, when the *Copelin* decision was published. *Cf. Fresneda v. State*, 458 P.2d 134, 143 n. 28 (Alaska 1969); *Ladd v. State*, 664 P.2d 178 (Alaska App.1983). District Court Judge Vochoska concluded that *Copelin* would not apply to pending cases but only to cases involving arrests occurring after Feb-

ruary 18, 1983. *See State v. Glass*, 596 P.2d 10 (Alaska 1979). This holding was affirmed on appeal to the superior court in an unpublished opinion by Judge Justin Ripley. Yerrington has petitioned this court for hearing, seeking reversal of that decision. Alaska R.App.P. 302(b). We have concluded that the issue presented is of sufficient importance to warrant a published opinion by this court. We thus grant the petition for hearing. Alaska R.App.P. 304(c). Having carefully considered the decisions of the United States Supreme Court and the Alaska Supreme Court on the issue of retroactivity, as well as our own decisions, we conclude that *Copelin* should be given limited retroactive effect and made applicable to all cases pending in the trial court or on direct review at the time it was decided and therefore reverse.[1]

In *United States v. Johnson*, 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982), the United States Supreme Court considered whether its decision in *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), should be given retroactive effect. In reaching its conclusion, the Court divided its past precedents into three categories. First, decisions applying settled law to new factual situations are given full retroactive effect. Second, decisions constituting "a sharp break with the past" are nonretroactive. Finally, those cases which hold that the trial court lacked authority to convict or punish a criminal defendant are given full retroactivity. Cases not covered by one of these rules are to be resolved on a case by case basis.

In discussing retroactive application of new decisions, the Court in *Johnson* seemed to draw a line between cases which were final and cases pending on appeal.

---

1. We originally granted the petition for hearing and affirmed the trial court's decision giving *Copelin* only prospective effect. *Yerrington v. Anchorage,* Op. No. 282 (Alaska App., August 26, 1983). We relied on a determination that *Copelin* constituted a sharp break with past decisions and on the United States Supreme Court decision in *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). We granted Yer-

rington's petition for rehearing to permit him oral argument and to consider the effect of *Howe v. State,* 611 P.2d 16, 17 n. 1 (Alaska 1980). Having heard argument and considered *Howe,* we conclude that *Howe* is binding and that our original decision was incorrect. We have therefore withdrawn it from publication and substituted this decision in its place.

Final cases were defined as " '[cases] where the judgment of conviction was rendered, the availability of appeal exhausted, and the time for petition for certiorari had elapsed [or a petition for certiorari finally denied, all] before [the decision in question was reached].' " *Johnson,* 457 U.S. at 542 n. 8, 102 S.Ct. at 2583 n. 8, 73 L.Ed.2d at 208 n. 8 (quoting *Linkletter v. Walker,* 381 U.S. 618, 622 n. 5, 85 S.Ct. 1731, 1733 n. 5, 14 L.Ed.2d 601, 604 n. 5 (1965)).

Thus decisions which did not constitute a "sharp break with the past" and did not fit into the other *Johnson* categories would be given limited retroactivity and applied to cases then pending on appeal. 457 U.S. at 554, 102 S.Ct. at 2590, 73 L.Ed.2d at 217. Full retroactivity, *i.e.,* application to final decisions challenged in post-conviction relief proceedings as well as pending cases, would depend upon application of the criteria established in *Stovall v. Denno,* 388 U.S. 293, 297, 87 S.Ct. 1967, 1970, 18 L.Ed.2d 1199 (1967). *See United States v. Johnson,* 457 U.S. at 563–64, 102 S.Ct. at 2595, 73 L.Ed.2d at 223 (Brennan, J., concurring). These criteria are summarized in *State v. Glass,* 596 P.2d 10, 13 (Alaska 1979).

The municipality argues that *Copelin* falls within the second category discussed in *Johnson:* those cases making a sharp or clear break with the past. In identifying this type of case the United States Supreme Court said:

> Conversely, where the Court has expressly declared a rule of criminal procedure to be "a clear break with the past," it almost invariably has gone on to find such a newly-minted principle nonretroactive. In this second type of case, the traits of the particular constitutional rule have been less critical than the Court's express threshold determination that the " 'new' constitutional interpretatio[n] ... so change[s] the law that prospectivity is arguably the proper course." Once the Court has found that the new rule was unanticipated, the second and third Stovall factors—reliance by law enforcement authorities on the old standards

and effect on the administration of justice of a retroactive application of the new rule—have virtually compelled a finding of nonretroactivity.

*United States v. Johnson,* 457 U.S. at 549–50, 102 S.Ct. at 2587, 73 L.Ed.2d at 213–14 (citations and footnote omitted). In comparing this line of cases to the question of the retroactivity of *Payton,* the Court said:

> By the same token, however, Payton also did not announce an entirely new and unanticipated principle of law. In general, the Court has not subsequently read a decision to work a "sharp break in the web of the law," unless that ruling caused "such an abrupt and fundamental shift in doctrine as to constitute an entirely new rule which in effect replaced an older one ...." Such a break has been recognized only when [1] a decision explicitly overrules a past precedent of this Court ... or [2] disapproves a practice this Court arguably has sanctioned in prior cases, or [3] overturns a longstanding and widespread practice to which this Court has not spoken, but which a near-unanimous body of lower court authority has expressly approved.

*Id.* at 551, 102 S.Ct. at 2588, 73 L.Ed.2d at 215 (citations omitted).

The municipality argues that the Alaska Supreme Court's decision in *Copelin* satisfies all three of the *Johnson* tests for finding a "sharp break in the web of the law." First, the *Copelin* decision effectively overruled *Eben v. State,* 599 P.2d 700 (Alaska 1979), which arguably held that the sole purpose of AS 12.25.150(b) was to aid an arrestee in attaining bail or legal representation. *See Copelin v. State,* 659 P.2d at 1210–11 ("To the extent that language in *Eben* indicates that the *sole* purpose of AS 12.25.150(b) is to aid an arrestee in the attainment of bail or legal representation, it is disavowed.").

Second, the municipality argues that *Copelin* disapproved a practice arguably authorized by three prior decisions of the Alaska Supreme Court: *Graham v. State,* 633 P.2d 211, 214, 217 (Alaska 1981) (both majority and dissent strongly intimated

that there was no right to consult counsel prior to determining whether to take a breathalyzer examination); *Palmer v. State*, 604 P.2d 1106, 1110 (Alaska 1979) (court held that a person arrested for operating a motor vehicle while under the influence of intoxicating liquor has no constitutional or statutory right to refuse to submit to a breathalyzer test, and that it was not necessary for the police to inform the arrestee that he or she could refuse the test in order to render the test results admissible); *Anchorage v. Geber*, 592 P.2d 1187, 1188, 1192 (Alaska 1979) (court held that the police have no duty to advise a suspect of any right to counsel before administering field sobriety tests and further held that a drunk driving suspect had no right to have an attorney present at field sobriety tests).

In *Graham*, the majority rejected Graham's claim that she was confused by the inconsistency between the implied consent warning and the *Miranda* warnings. In his dissent in *Graham*, Justice Connor, joined by Justice Rabinowitz, said:

> The implied consent warning was modified in California in an effort to avoid confusion [between a defendant's *Miranda* rights and the risks attending a refusal of a breathalyzer examination]. In a current form it states:
>
> "You are required by State law to submit to a chemical test to determine the alcoholic content of your blood. You have a choice of whether the test is to be of your blood, breath or urine. If you refuse to submit to a test, or fail to complete a test, your driving privilege will be suspended for a period of six months. *You do not have the right to talk to an attorney, or have an attorney present, before stating whether you will submit to a test,* before deciding which test to take, or during the administration of the test chosen."
>
> See *McDonnell v. Department of Motor Vehicles*, 119 Cal.Rptr. 804, 807 n. 1, 45 Cal.App.3d 653 (1975). I would suggest that the warning used in Alaska be modified by adding a qualification that the

motorist does not have the right to remain silent to avoid answering whether she understands her rights or whether she will take the exam *and a qualification regarding her right to an attorney similar to the one quoted above.* I would further modify the instruction to delete the references to a choice among test methods, as AS 28.35.031 provides only for the breath test and not for blood or urine tests.

633 P.2d at 218 n. 3 (emphasis added). The municipality points out that in suggesting a proposed warning to motorists, Justice Connor did not recommend modifying the language from the California warning which reads: "You do not have the right to talk to an attorney, or have an attorney present, before stating whether you will submit to a test."

Third, the municipality continues, even if we were to conclude that the Alaska Supreme Court had not spoken on the issue, *Copelin* apparently overturned the longstanding and widespread practice of delaying a drunk driving suspect's contact with counsel until after administration of the breathalyzer. A near unanimous body of lower court authority had expressly approved this practice. *See United States v. Johnson*, 457 U.S. 537, 551, 102 S.Ct. 2579, 2588, 73 L.Ed.2d 202, 215 (1982). The municipality reasons that Yerrington has not pointed to a single lower court decision anticipating the supreme court's decision in *Copelin* and that independent research has failed to uncover such a case. Further, police could understandably have relied on our decision in *Copelin* which was issued nine months prior to Yerrington's arrest. *See Copelin v. State*, 635 P.2d 492 (Alaska App.1981), *rev'd*, 659 P.2d 1206 (Alaska 1983).

For the foregoing reasons, the municipality suggests that the supreme court's holding in *Copelin* should apply only to arrests occurring after its publication on February 18, 1983. *See State v. Glass*, 596 P.2d 10, 13–15 (Alaska 1979); *Judd v. State*, 482 P.2d 273, 276–78 (Alaska 1971); *State v.*

*Lamb*, 649 P.2d 971, 972 (Alaska App. 1982).

The municipality concludes that this result is consistent with current federal law as articulated in *Johnson* and directly supported by the United States Supreme Court's treatment of analogous decisions granting a right to counsel at pretrial proceedings. *See Adams v. Illinois*, 405 U.S. 278, 92 S.Ct. 916, 31 L.Ed.2d 202 (1972) (plurality opinion); *Coleman v. Alabama*, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970) (case announcing a constitutional right to appointed counsel at preliminary hearings only applicable to preliminary hearings conducted after the date of the decision); *Stovall v. Denno*, 388 U.S. 293, 301, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199, 1205–06 (1967) (holding a decision establishing a right to counsel at a lineup would only be applied to lineups taking place after the date of the decision).

Yerrington counters that the supreme court's *Copelin* decision was inevitable in light of the clear mandate of the statute. It was therefore a case of settled law being applied to new facts: the first *Johnson* category. He reasons that the language in *Eben, Graham, Palmer* and *Geber*, relied upon by the municipality, was merely dicta and that the supreme court never specifically held that a person could be denied his statutory right to contact counsel pending administration of a breathalyzer test. *See* AS 12.25.150(b); Alaska R.Crim.P. 5(b). Yerrington further notes that the supreme court granted a hearing shortly after we

2. We note that Yerrington, in his petition for hearing, cites as precedent a recent order from the Alaska Supreme Court which stated:

On consideration of the petition for hearing filed January 26, 1983 and the response to the petition filed February 9, 1983,

IT IS ORDERED:

1. The petition for hearing is granted.
2. The orders of the District Court and the Superior Court under review are vacated, and this case is remanded to the District Court for further proceedings in light of *Copelin v. State*, [659 P.2d 1206 (Alaska 1983)].

*LeDoux v. Department of Public Safety*, File No. 7461 (Alaska, March 3, 1983). We do not find the *LeDoux* order persuasive for two reasons: First, we think that the supreme court's order

decided *Copelin v. State*, 635 P.2d 492 (Alaska App.1981). In Yerrington's view, public policy precludes a rule that would permit a finding of reasonable reliance by law enforcement agencies on a decision of this court until the supreme court acts on a petition for hearing.

■ Yerrington additionally argues that, in any event, the Alaska Supreme Court has already spoken to the question of retroactivity of decisions establishing a right to counsel at pretrial proceedings.[2] In *Houston v. State*, 602 P.2d 784, 795–96 (Alaska 1979), the Alaska Supreme Court held that a criminal defendant has a constitutional right to have counsel present during a psychiatric examination of the defendant conducted by a psychiatrist employed by the state. In *Howe v. State*, 611 P.2d 16 (Alaska 1980), the court applied this decision retroactively. The court said:

Since the finding of Howe's guilt could have been affected by the court's ruling [denying Howe the right to have his attorney present at the examination], the considerations which we found persuasive in denying retroactivity to our opinion in *State v. Glass*, 583 P.2d 872 (Alaska 1978), involving surreptitious monitoring of conversations, are not applicable. *See State v. Glass*, 596 P.2d 10 (Alaska 1979) (on *rhg.*).

611 P.2d at 17 n. 1.

Yerrington argues that the supreme court anticipated application of *Howe* in *Copelin* when it rejected Justice Compton's suggestion that violation of AS 12.25.150(b)

did little more than recognize that LeDoux should be given the benefit of the holding in *Copelin*, since LeDoux was in precisely the same procedural posture as Copelin when *Copelin* was decided; thus, in effect, the supreme court's order in *LeDoux* can be viewed as a *de facto* consolidation of *LeDoux* with *Copelin*. Second, we note Alaska Appellate Rule 214, which provides in relevant part:

(a) The court may determine that an appeal shall be disposed of by summary order and without formal written opinion.

. . . .

(d) *Summary decisions under this rule are without precedential effect and may not be cited in the courts of this state.*

(Emphasis added.)

should not trigger invocation of an exclusionary rule. He relies on the following language in support of this argument:

> Additionally, a violation in this type of case, as opposed to a violation of the forceable arrest statute [to which the exclusionary rule does not apply, *see State v. Sundberg*, 611 P.2d 44, 50–52 (Alaska 1980),] has an effect on the defendant's ability to present a defense at trial. Here, the defendants were deprived of their statutory right to counsel, and evidence gathered after the right to counsel has been denied should be excluded from trial. *See Escobedo v. Illinois*, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964).[3]

659 P.2d at 1214–15.

Resolution of this case has not been easy. The municipality has made a persuasive argument that *Copelin* made a sharp break with the past. In *Howe* the supreme court granted retroactivity to *Houston*, distinguishing *Glass* on the ground that the considerations mentioned in *Glass* did not apply to absence of counsel which might affect a finding of guilt, without acknowledging that *Adams* and *Stovall* were to the contrary or explaining rejection of the reasoning of those cases.

Nevertheless, *Howe* is a binding decision of the Alaska Supreme Court which we must follow. *Johnson* was concerned with a fourth amendment error which violated a prophylactic rule, not with an error that interfered with a correct determination of guilt or innocence. Where an error disturbs the jury's ability to find the truth, a subsequent decision correcting that error is usually given retroactive effect. The right to contact counsel, established in *Copelin*, is indistinguishable from the right, established in *Howe*, to have counsel present at a psychiatric interview in terms of the possible impact on the ultimate question of guilt or innocence. We therefore follow *Howe* and hold that *Copelin* will be applicable to all cases pending in the trial courts or on direct appeal at the time *Copelin* was decided. Nevertheless, we follow Justice Brennan's concurring opinion in *Johnson*, which we find consistent with *Howe*, and, applying the *Stovall* criteria, conclude that *Copelin* will not be applicable to those cases which were final at the time *Copelin* was decided.

The judgment of the superior court affirming the decision of the district court is REVERSED. Yerrington's conviction is reversed and this case is REMANDED for retrial.[4]

---

**3.** In *Johnson v. New Jersey*, 384 U.S. 719, 732, 86 S.Ct. 1772, 1779–80, 16 L.Ed.2d 882, 891 (1966), the court held that *Miranda* and *Escobedo* would only be applied to trials taking place after they were decided. *But see Ladd v. State*, 664 P.2d 178, 182 (Alaska App.1983) (declining to give retroactive effect to *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), in cases final at the time it was decided).

**4.** *Copelin* did not address prosecutions for refusal to submit to a chemical test. AS 28.35.032(f). We therefore express no opinion regarding the impact of *Copelin* on such prosecutions.