James T. PASCUA, Appellant,

v.

STATE of Alaska, Appellee.

No. 5154.

Court of Appeals of Alaska.

Sept. 24, 1981.

---

———————

James D. Oswald, Asst. Public Defender, and Brian Shortell, Public Defender, Anchorage, for appellant.

Peter A. Michalski, Asst. Atty. Gen., Sp. Prosecutions and Appeals, Anchorage, and Wilson L. Condon, Atty. Gen., Juneau, for appellee.

Before BRYNER, C. J., and COATS and SINGLETON, JJ.

## OPINION

COATS, Judge.

 James T. Pascua was charged with murder in the first degree[1] for the shooting death of Edwin Pebenito. He was convicted at a jury trial of the lesser included offense of manslaughter[2] and was sentenced to serve two years in jail as a condition of a five-year suspended imposition of sentence. He has appealed his conviction to this court, contending that the trial court erred in admitting his inculpatory statements which were obtained as the result of a warrantless arrest in his home; that the trial court erred in not dismissing an indictment which the prosecutor allegedly obtained without presenting exculpatory evidence to the grand jury; that the trial court erred in failing to dismiss the indictment because the prosecutor presented hearsay evidence to the grand jury; and that his due process and equal protection rights under the Alaska Constitution were violated because the prosecutor proceeded by grand jury indictment instead of holding a previously scheduled preliminary hearing. We have reviewed these allegations of error and affirm Pascua's conviction. Pascua's first allegation of error, that his statements should be suppressed because they were obtained as a result of a warrantless arrest in his home, merits an extended discussion. His other points on appeal will be disposed of summarily.[3]

On March 15, 1979, a small group of cannery workers was socializing and drinking beer on the second floor of the King Crab Cannery bunkhouse in Kodiak. The defendant, James Pascua, was among those present. Shortly before 10:30 p. m., Edwin Pebenito returned to the bunkhouse from downtown and joined the group. It is undisputed that shortly after Edwin Pebenito arrived he was shot once by James Pascua.

1. Former AS 11.15.010 reads as follows:

 *First Degree Murder.* A person who, being of sound memory and discretion, purposely, and either of deliberate and premeditated malice or by means of poison, or in perpetrating or in attempting to perpetrate, rape, arson, robbery, or burglary kills another, is guilty of murder in the first degree, and shall be sentenced to imprisonment for not less than 20 years to life.

2. Former AS 11.15.040 reads as follows:

 *Manslaughter.* Except as provided in §§ 10–30 of this chapter, a person who unlawfully kills another is guilty of manslaughter, and is punishable by imprisonment in the penitentiary for not less than one year nor more than 20 years.

3. The following is a brief explanation of the disposition of Pascua's other points on appeal:

 1. We hold the trial court did not err in failing to dismiss the indictment for the alleged failure of the prosecutor to present exculpatory information to the grand jury. We do not feel that the information which was not presented by the prosecution rose to the level where it was required to be presented to the grand jury as exculpatory evidence under *Frink v. State*, 597 P.2d 154 (Alaska 1979).

 2. We hold the trial court did not err in failing to dismiss an indictment because the prosecution presented hearsay testimony to the grand jury of the physician who performed the autopsy on Edwin Pebinito. We find the evidence from non-hearsay sources was sufficient to establish the cause and manner of death. *Id.* at 163.

 3. We hold the trial court did not err in refusing to allow Pascua to have the benefit of a preliminary hearing which was cancelled because Pascua was indicted by grand jury. We hold that the failure to allow Pascua a preliminary hearing did not violate Pascua's rights to due process and equal protection under art. I, §§ 7 and 1 of the Alaska Constitution. *Buchanan v. State*, 554 P.2d 1153 (Alaska 1976), *modified*, 561 P.2d 1197 (Alaska 1977); *Maze v. State*, 425 P.2d 235 (Alaska 1967); *Martinez v. State*, 423 P.2d 700 (Alaska 1967).

Pebenito then ran down to the main floor of the bunkhouse and was shot twice more by Pascua. Pascua then left the cannery.

The Kodiak police were summoned and they arrived at the bunkhouse at about 10:30 p. m. The police learned that Pebenito was dead and that Pascua had shot him. They learned that Pascua lived at 815 Willow. The weapon which was used to shoot Pebenito was not recovered. Between midnight and 12:30 a. m. the police, without either an arrest or search warrant, went to 815 Willow where Pascua lived. The house was dark and the officers knocked for several minutes. Apparently, at some time while they were knocking, the police indicated that they would break down the door if it was not opened. One of the residents came to the door and informed the police that Pascua was asleep in one of the back bedrooms. Pascua was awakened and arrested. He was given a *Miranda* warning. Pascua stated he did not understand the warning. Pascua was then taken to the police station where he agreed to take a breathalyzer examination to determine his level of intoxication. While the breathalyzer was warming up, Pascua was again read his *Miranda* rights and signed a waiver indicating he understood his rights. He then made a statement to the police in which he admitted shooting Pebenito. Pascua then took the breathalyzer examination which indicated that he was intoxicated.[4] The next morning Pascua was again reminded of his *Miranda* warning and repeated his statement.

Pascua argues that his statements should be suppressed because they were the fruit of a warrantless arrest. In *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), the United States Supreme Court held that a warrantless nonconsensual entry into a suspect's home to make a routine felony arrest violated the fourth amendment. We find that this case involves the question of whether the *Payton* requirement that the police have a warrant before entering a suspect's home to make an arrest should be applied retroactively.[5]

We first note that in Pascua's case the police had probable cause to arrest for a serious felony and had probable cause to believe that Pascua would be present in his residence. The record also indicates that the police did not violate the statute which requires them to announce their presence and purpose.[6]

We now examine the major issue raised in this appeal: whether the holding of *Payton v. New York*, that a warrant is required to arrest a suspect in his residence, should be applied retroactively to Pascua's case. Therefore, we turn to an analysis of cases by the Alaska Supreme Court to determine whether *Payton* should be applied retroactively. We conclude that, following the principles enunciated in *State v. Glass*, 596 P.2d 10 (Alaska 1979), the holding in *Payton* should not be applied retroactively to Pascua.

*Glass*, following *Judd v. State*, 482 P.2d 273 (Alaska 1971), concluded that a court

---

4. The breathalyzer reading was .21. A person commits the crime of driving while intoxicated if he operates a motor vehicle when his blood alcohol level, as measured by the breathalyzer, is .10 or greater. AS 28.35.030.

5. It would be unnecessary for us to reach the issue of the retroactivity of *Payton* if the entry into Pascua's home was obtained by consent or was necessitated by exigent circumstances. However, we find that we would be unable, without further findings from the trial court, to make an informed decision as to whether either of these theories would be applicable here. Because the issue of the retroactivity of *Payton* has been fully briefed in this case, because it is an issue which is currently pending before us in a number of other appeals, and because of the

possibility that we might ultimately have to reach the issue even if we were to remand this case for further findings on the issues of consent and exigent circumstances, we have decided that judicial economy warrants our resolution of the *Payton* issue, despite the normal rule calling for avoidance of constitutional issues when an appeal can be resolved on nonconstitutional grounds.

6. AS 12.25.100 reads as follows:
 *Breaking into building or vessel to effect arrest.* A peace officer may break into a building or vessel in which the person to be arrested is or is believed to be, if the officer is refused admittance after he has announced his authority and purpose.

must decide on a case by case basis whether to apply a newly announced rule of law retroactively. The court outlined three factors to consider in deciding to apply a rule of law retroactively:

> "(a) the purpose to be served by the new standards; (b) the extent of the reliance by law enforcement authorities on the old standards; and (c) the effect on the administration of justice of a retroactive application of the new standards."[7]

The purpose of the rule in *Payton* is to protect the privacy of people in their homes by imposing upon the police the duty to get a warrant before arresting someone in his home. As in *Glass*, it is clear that the purpose of excluding evidence obtained in violation of *Payton* is not because that evidence is unreliable, but to protect privacy values. If evidence obtained in violation of *Payton* were excluded because it was unreliable, then there would be a compelling argument for applying the rule excluding the evidence retroactively. However, the evidence obtained in violation of *Payton* is reliable and thus we conclude, as did the supreme court in *Glass*, that this factor weighs against applying *Payton* retroactively. *State v. Glass*, 596 P.2d at 13–14.

We next turn to the issue of whether the reliance by law enforcement officials on the law as it existed before *Payton* was reasonable.[8] We first note that the arrest in this case took place on March 16, 1979. *Payton* was not decided until April 15, 1980, more than one year after Pascua's arrest. At the time of Pascua's arrest there was substantial authority both for the position that an arrest warrant was necessary to arrest a suspect in his home and for the position that an arrest warrant was not required.[9] The Supreme Court of Alaska has not ruled on the *Payton* issue.[10] It seems clear that

---

7. These factors are set forth in *Glass*, 596 P.2d at 13, and *Judd*, 482 P.2d at 278. A footnote is omitted from the quoted material in the text which cites these criteria as being originally from *Linkletter v. Walker*, 381 U.S. 618, 636–38, 85 S.Ct. 1731, 1741–42, 14 L.Ed.2d 601, 612–13 (1965).

8. In deciding whether a decision is to be given retroactive application, many courts first address the question whether a case establishes a new rule of law. For instance, in *Glass*, 596 P.2d at 12, the court stated, "[i]f a decision simply applies an established rule of law, even if in a new factual situation, the question of retroactivity does not arise. The question of retroactivity arises only when the court announces a new rule of law." For purposes of our analysis, whether *Payton* announced a new rule of law seems to be very similar to the question of whether it was reasonable for law enforcement authorities to rely on the law as it existed before *Payton*. We therefore treat these questions as the same in our analysis in this opinion. Implicit in our conclusion is the holding that *Payton* did announce a new rule of law.

9. In *Payton* the United States Supreme Court summarized the state of the law as follows:

> The Supreme Court of Florida rejected the constitutional attack, [to require warrants before an arrest could be made in the suspect's home] as did the New York Court of Appeals in this case. The courts of last resort in 10 other States, however, have held

that unless special circumstances are present, warrantless arrests in the home are unconstitutional. Of the seven United States Courts of Appeals that have considered the question, five have expressed the opinion that such arrests are unconstitutional.

*Payton v. New York*, 445 U.S. at 575, 100 S.Ct. at 1374, 63 L.Ed.2d at 644 (footnotes omitted).

> A majority of the States that have taken a position on the question permit warrantless entry into the home to arrest even in the absence of exigent circumstances. At this time, 24 States permit such warrantless entries; 15 States clearly prohibit them, though three States do so on federal constitutional grounds alone; and 11 States have apparently taken no position on the question.

*Id.* at 598, 100 S.Ct. at 1386, 63 L.Ed.2d at 658 (footnotes omitted).

10. In its summary on positions taken by state courts, the Supreme Court of the United States classified Alaska as a state which permits warrantless arrests in the home. The Supreme Court relied on AS 12.25.100 which reads as follows:

> *Breaking into building or vessel to effect arrest.* A peace officer may break into a building or vessel in which the person to be arrested is or is believed to be, if the officer is refused admittance after he has announced his authority and purpose.

However, this statute does not address the separate question of whether a warrant is also required in addition to compliance with the statute in order for a peace officer to make an

the change in the law in *Payton* was more of a predictable change than in *Glass*. *See State v. Glass*, 596 P.2d at 14. However, although the issue is closer than in *Glass*, we find that the reliance by law enforcement authorities on the law as it existed before *Payton* was reasonable given the substantial body of authority that a warrant was not necessary to arrest a suspect in his home.

We have little data before us to predict the effect on the administration of justice of a retroactive application of the new standards. In *Glass* the court was provided with an estimate of the number of cases pending which a retroactive ruling might affect. *State v. Glass*, 596 P.2d at 15. Although we do not have such an estimate, we note that several cases which have been argued before us have involved the question of whether *Payton* should be applied retroactively. It seems clear that a number of cases involve this issue and that there was substantial reliance by law enforcement officials on the state of the law before *Payton*.

We therefore conclude that in balancing the various factors we must consider in deciding whether to make a case retroactive we should not apply *Payton* retroactively.[11] Following *Glass*,[12] we conclude that *Payton* should be applied only to arrests occurring on or after April 15, 1980.[13]

The conviction is AFFIRMED.

---

entry to make an arrest of a suspect in his home where exigent circumstances are not involved.

**11.** We note that courts in other jurisdictions have declined to apply *Payton* retroactively. *See, e. g., Clements v. State*, 390 So.2d 1131, 1135 (Ala.Crim.App.1980); *State v. Friddle*, 396 So.2d 1242, 1246 (La.1981); *State v. Smith*, 305 N.W.2d 798, 799, (Minn.1981); *State v. Counts*, 27 Wash.App. 773, 620 P.2d 1013, 1014 (1980). In *State v. Perez*, 176 N.J.Super. 292, 422 A.2d 1323, 1327 (A.D. 1980) the court held that exigent circumstances permitted the police to make a warrantless arrest in the suspect's home but, in dictum, went on to indicate that *Payton* was not retroactive. *Cf. United States v. Blake*, 632 F.2d 731, 735 (9th Cir. 1980) (where the court ruled that *United States v. Prescott*, 581 F.2d 1343 (9th Cir. 1978), requiring police officers to obtain a warrant to make an arrest in the suspect's home absent exigent circumstances, must be applied retroactively because its result was "clearly foreshadowed.") The court held it unnecessary to decide or comment on the retroactivity of *Payton*. In *Busch v. State*, 392 So.2d 272, 274 (Fla.App.1980), on remand from the United States Supreme Court, the Florida District Court of Appeal applied *Payton* to a case that had been on direct review at the time the *Payton* decision was rendered, citing *Linkletter v. Walker*, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965).

**12.** *State v. Glass*, 596 P.2d at 15. We believe the result which we obtain by analyzing *Glass* is consistent with decisions of the United States Supreme Court. In *United States v. Peltier*, 422 U.S. 531, 535, 95 S.Ct. 2313, 2316, 45 L.Ed.2d 374, 380 (1975), the court observed:

It is indisputable, however, that in every case in which the Court has addressed the retroactivity problem in the context of the exclusionary rule, whereby concededly relevant evidence is excluded in order to enforce a constitutional guarantee that does not relate to the integrity of the factfinding process, the Court has concluded that any such new constitutional principle would be accorded only prospective application.

*See also Williams v. United States*, 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971); *Desist v. United States*, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969). Professor LaFave, in analyzing the Supreme Court opinions, concludes that "it is now settled that ... a new rule of law governs only searches and seizures occurring after its pronouncement." 3 LaFave, Search and Seizure, § 11.5, at 692 (1978).

**13.** *Payton* was decided on the basis of the fourth amendment to the United States Constitution as applied to the states through the fourteenth amendment. Our decision not to apply *Payton* retroactively is based upon our interpretation of those constitutional provisions. We have also considered Art. I, §§ 14 and 22 of the Alaska Constitution and do not believe these sections dictate a different result. Art. I, § 14 of the Alaska Constitution reads as follows:

*Searches and Seizures.* The right of the people to be secure in their persons, houses and other property, papers, and effects, against unreasonable searches and seizures, shall not be violated. No warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Art. I, § 22 of the Alaska Constitution reads as follows:

> *Right of Privacy.* The right of the people to privacy is recognized and shall not be infringed. The legislature shall implement this section.

We reserve decision on cases where a trial judge, anticipating *Payton* ruled that the police could not make a warrantless arrest in a suspect's home when the police conduct occurred before the *Payton* decision. This issue is before us in *Unger v. State*, File No. 5287, and *Carothers v. State*, File No. 5330.