**Ernest Jerome TAYLOR, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 4932.**

Court of Appeals of Alaska.

April 8, 1982.

James D. Oswald, Asst. Public Defender, and Brian Shortell, Public Defender, Anchorage, for appellant.

Charles M. Merriner, Asst. Atty. Gen., Anchorage, and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before BRYNER, C. J., and COATS and SINGLETON, JJ.

## OPINION

COATS, Judge.

Ernest Jerome Taylor was charged with armed robbery under former AS 11.15.240 and 11.15.295. Taylor was tried by a jury[1] and was found guilty as charged. An appeal challenging the legality of Taylor's arrest was taken to this court, and following briefing and oral argument, the case was remanded to the trial court for further proceedings. The remand proceedings have been conducted, and the case is once again before this court for consideration.

On the night of January 16, 1979, K. H., a young woman, was clerking at the Brown Jug Liquor Store at Fifth Avenue and Ingra Street in Anchorage. At approximately 9:00, a man later identified by K. H. as Taylor entered the store and bought a bottle of apricot brandy. After paying for the brandy, the man said he also needed a case of beer. In order to get the beer, K. H. had to go into the back walk-in cooler. The man followed her into the cooler, punched or grabbed K. H., and pulled his pants down. He then drew a large revolver out of his pocket and ordered K. H. to get down on the floor and take her pants off. At that time, an accomplice entered the store. The accomplice shouted that he could not get the till open, so the first robber marched K. H. to the front of the store at gunpoint. K. H. opened the till, and the robbers took the money and the bottle of brandy and made their escape.

The police were called, and K. H. gave a description of the two robbers. She described the first robber as black and over six feet tall with a slim build. K. H. also described the grey wool coat that the robber wore. She described the robber's accomplice as black, about 5′9″ to 5′10″ tall, with a stocky build.

Investigator Kenneth Foster showed K. H. a six-man photographic lineup, but she could not identify any of the pictures. This lineup did not include a picture of Ernest Taylor. Five or six hours later, Foster showed K. H. a different six-photograph lineup, and this time she identified Ernest Taylor as the first robber.

On January 17, 1979, based mainly on K. H.'s identification of Ernest Taylor as one of the robbers, the Anchorage Police believed that they had probable cause to arrest Ernest Taylor for the robbery. Investigator Foster went to contact a magistrate to get an arrest warrant for Ernest Taylor. At the same time, Investigator David Hardy and Officer Richard Coffey went to an apartment at 1020 Medfra to attempt to contact Ernest Taylor.

The record reflects that officers Hardy and Coffey had reason to believe that Ernest Taylor might be found at 1020 Medfra. At the time the officers went to the residence, they believed that William Fisher lived at that address, and they believed that Fisher and Ernest Taylor had been arrested at that residence about one month earlier for armed robbery.[2] However, the officers did not know if Ernest Taylor actually lived at that address.[3] The officers believed that

1. Initially, Judge Peter J. Kalamarides presided over the trial. Following Kalamarides' death, Judge Eben H. Lewis completed the trial.

2. Although it was accurate that Ernest Taylor and William Fisher were arrested for an earlier armed robbery, Taylor had actually been arrested at Ft. Richardson. Apparently Fisher's house had been searched pursuant to a search warrant which related to that crime and per-

sonal papers belonging to Ernest Taylor were found. This was apparently the basis for connecting Taylor to the residence. The original robbery charges against Fisher and Taylor were dismissed.

3. The police knew that papers and identification belonging to Taylor had been found at the Medfra address during the previous month. There was also a strong possibility that Fisher

William Fisher lived at the address, and they could have reasoned from the information of the arrest one month before that Fisher could have been Ernest Taylor's accomplice in the second robbery.[4]

After arriving at 1020 Medfra, Investigator Hardy and Officer Coffey knocked at the apartment door, and the door was answered by a black man. According to the testimony at the suppression hearing held before trial, Coffey identified himself as a police officer and asked the man what his name was. He identified himself as David Taylor. Coffey asked David Taylor for identification and he replied that his identification was in the bedroom. David Taylor started to go to the bedroom and Investigator Hardy asked him if they could come in, David Taylor said, yes. [Tr. 226] Investigator Hardy and Officer Coffey entered the apartment. Hardy stayed by the door and Coffey followed David Taylor down the hall to the back bedroom.

As Coffey followed David Taylor down the hall, he observed Ernest Taylor attempting to hide in another bedroom. Ernest Taylor was then arrested. At this time, Ernest Taylor's grey wool coat was seized along with his driver's license and a box of pistol cartridges. A subsequent search, pursuant to a warrant, uncovered an empty bottle of apricot brandy, which was linked to the robbery.

Ernest Taylor moved to suppress the evidence that was seized pursuant to the arrest, arguing that he was illegally arrested. Superior Court Judge Ralph Moody ruled that David Taylor had consented to the initial entry into the house by Investigator

Hardy and Officer Coffey and that it was reasonable for Officer Coffey to follow David Taylor to protect himself from possible danger. Judge Moody apparently ruled that it was reasonable for the police officers to conclude that David Taylor may have been Ernest Taylor's accomplice in the robbery of the Brown Jug Liquor Store and that it was necessary for Officer Coffey to follow David Taylor down the hall to insure that David Taylor did not arm himself.

After Ernest Taylor's conviction at trial, the issue concerning the legality of his arrest was argued in this court. We remanded the case. This was done in part because the trial testimony of the officers established that at about the time that David Taylor allowed the officers to enter the residence, Investigator Hardy told him they "had a warrant for Ernie." This testimony had not been before Judge Moody at the suppression hearing and was clearly relevant to his decision that the officers had initially entered the residence with David Taylor's consent since his actions in inviting the officers into the residence could arguably have been merely yielding to the authority of the warrant. *Bumper v. North Carolina*, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968). In addition, because the decision on the consent issue might make other issues determinative and because subsequent to the trial court's decision in this case the United States Supreme Court decided an important case which held that it was illegal to arrest a suspect in his home without an arrest warrant, we asked the court to allow the parties to argue other issues, including the issue of whether the Supreme Court case, *Payton v. New York*,

was Taylor's accomplice in the second robbery. However, at the time of his arrest one month earlier, Taylor had been in the army and was living on Ft. Richardson. Investigator Hardy admitted on several occasions that he really did not know where Ernest Taylor was staying.

**4.** Officer Tim Kasper had interviewed a witness, Daniel Green, who was a friend of Ernest Taylor, on the evening following the robbery of the Brown Jug Liquor Store. Green said Taylor told him that a man named Fisher was his

partner in robbery. However, it does not appear that Kasper's information from Green was conveyed to Investigator Hardy and Officer Coffey since Investigator Hardy testified that he had no idea who the second robber was. The thrust of the testimony of Officer Coffey and Investigator Hardy seems to be that Fisher was considered to be a possible accomplice because he had been previously arrested with Taylor for a similar crime.

445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), should be applied retroactively.[5]

Judge Eben Lewis conducted the remand hearing. Judge Lewis concluded from the evidence that he could not tell whether David Taylor consented to the officers' initial entry into the apartment or whether he merely agreed to allow the officers to enter because of the arrest warrant. Judge Lewis concluded that whether or not the entry into the residence was made by consent, it was reasonable for the officers to protect themselves by having Officer Coffey follow David Taylor down the hall because the officers had reason to believe that David Taylor could be the accomplice in the armed robbery with Ernest Taylor. The case has been returned to this court.

We believe that the record supports Judge Lewis' finding that it is impossible to tell whether David Taylor consented to the entry or yielded to the authority of police officers who represented that they had a warrant. Since the state has the burden of establishing consent, we must conclude that it has failed in carrying that burden. *Slezlak v. State*, 454 P.2d 252, 257–58 (Alaska 1969). The state argued in its brief, which was filed before the remand, that the officers had entered the residence with consent and that the fourth amendment emphasized the importance of the threshold of the home.[6] The state argued that once the

officers were in the home, Officer Coffey's actions in following David Taylor to the bedroom were not a great additional intrusion and they were justified by the need for the police officers to conduct a protective search. Since the crossing of the threshold of the residence can no longer be justified by consent, the state's argument for a protective search must justify entry into the residence as well as the action of following David Taylor to the bedroom.

■■■ We do not believe that the record supports the conclusion that the police entry into the residence and the act of following David Taylor down the hall was justified by a protective search. Although the Alaska Supreme Court has recognized the protective search exception to the requirement that law enforcement officers should not conduct searches without a warrant, the court has said that the exceptions to the warrant requirement should be narrowly drawn. *State v. Spietz*, 531 P.2d 521, 525 (Alaska 1975); *Mattern v. State*, 500 P.2d 228, 231 (Alaska 1972). We conclude that to allow the protective search exception to the warrant requirement to be defined as broadly as the state asks us to in this case would substantially erode the warrant requirement.

Although it was certainly a reasonable police practice to go to a residence with which Ernest Taylor had been associated in

---

**5.** Several months after the decision to remand the instant case, this court decided that *Payton v. New York*, should not be applied retroactively in *Pascua v. State*, 633 P.2d 1033 (Alaska App.1981). During the remand of this case, the United States Supreme Court decided an important case involving a search for the subject of an arrest warrant in the home of a third party. The Supreme Court held that a search warrant was necessary to authorize the search for the subject of an arrest warrant in the house of a third party unless entry into the residence was obtained by consent or because of exigent circumstances. *Steagald v. United States*, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981).

**6.** In *Payton v. New York*, 445 U.S. 573, 590, 100 S.Ct. 1371, 1382, 63 L.Ed.2d 639, 653 (1980), the court said:

In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant.

This language is quoted in *Steagald v. United States*, 451 U.S. 204, 212, 101 S.Ct. 1642, 1648, 68 L.Ed.2d 38, 45 (1981). In *State v. Spietz*, 531 P.2d 521, 525 (Alaska 1975) (footnote omitted) the court said,

The home has traditionally been afforded special protection under the Fourth Amendment of the United States Constitution and under the Alaska constitution. A door of the home represents a firm constitutional barrier whether or not it is open.

*See also Sumdum v. State*, 612 P.2d 1018, 1021 (Alaska 1980).

an attempt to locate and arrest him, his connection with the residence was far from certain. However, given the information which the police had, it was certainly reasonable for them to conclude that Ernest Taylor might be at 1020 Medfra. The record does not, however, support a reasonable belief on the part of the officers that David Taylor might be Ernest Taylor. Investigator Hardy testified he knew Ernest Taylor and knew the person who answered the door was not Ernest Taylor. Officer Coffey had seen photographs of Ernest Taylor, and he said that David Taylor did not look like the pictures he had seen of Ernest Taylor. Given the information that the police had, there was a possibility that David Taylor could have been William Fisher or whoever was the accomplice to the armed robbery. Although the trial court noted that David Taylor did not particularly match the description of William Fisher or the description of the second armed robber, aside from the fact that David Taylor was a large black man, the court noted that a robbery victim might not give a totally accurate description of an armed robber, particularly since the evidence showed that most of K. H.'s contact was with the first robber. From the rather imprecise physical descriptions which the officers had of the second robber, it appears that almost any black man who opened the door at 1020 Medfra could have been considered a possible accomplice in the armed robbery.

We conclude that the facts here present a close case, we do not find that the objective facts known to the police were sufficient to justify the police intrusion into the home. Police frequently are called upon to go to residences that may harbor people who are suspected of serious crimes. We believe that the fourth amendment allows entry into a residence on the basis of a protective search only under compelling circumstances. Since an argument can frequently be made that when the police are investigating a serious crime, exigent circumstances exist which would allow them to follow a suspect into his home in order to protect themselves, it follows that only in the most serious situations can we allow this justification to be used. *See e.g. Gallmeyer v. State*, 640 P.2d 837 (Alaska App., 1982). To rule otherwise would seriously compromise the special protection which the home has been afforded under the fourth amendment of the United States Constitution and under the Alaska Constitution.[7] We therefore reject the argument that the protective search exception justifies the entry into the residence and the act of following David Taylor to his bedroom.

The state argues that if the entry into the residence was not justified for the purpose of conducting a protective search, then the entry into the residence was justified by the fact that the police probably had obtained an arrest warrant for Ernest Taylor by the time entry was made into the residence.[8] However, assuming that the police had an arrest warrant for Ernest Taylor, we do not believe that the police had sufficient information that Ernest Taylor was present at 1020 Medfra to justify their searching that residence for him on the basis of an arrest warrant. In *Davenport v. State*, 568 P.2d 939, 949 (Alaska 1977) (footnote omitted), the supreme court stated "A police officer may not enter a dwelling in search of a suspect for whom he has an arrest warrant unless, at a minimum, he has probable cause to believe the suspect is within." There is nothing in the record which would indicate that the residence at 1020 Medfra was Taylor's home. *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). We believe

---

7. *See* note 6, *supra.*

8. There are questions raised by this record about whether the arrest warrant was obtained before the police entry and whether, assuming the warrant was issued before the police entry,

Officer Coffey and Investigator Hardy had sufficient knowledge of the existence of the arrest warrant to justify their entry. Our disposition of this issue makes it unnecessary for us to decide the issues raised by these questions.

that the information which the police had about Taylor's connection with the 1020 Medfra residence was so tenuous that our justifying a police entry into that residence to search for Taylor on the basis of an arrest warrant would potentially allow the police to search any number of residences where a suspect had similar tenuous connections.[9] We believe that the fourth amendment of the United States Constitution and Art. 1, § 14 of the Alaska Constitution[10] require probable cause to justify entering a residence to search for the subject of the arrest warrant. We therefore conclude that the police did not have sufficient information to enter 1020 Medfra and search for Ernest Taylor, whether or not a valid arrest warrant had been issued for Taylor at the time the police entered the residence.

█ Since Ernest Taylor was arrested as a result of the illegal entry into the residence and the act of following David Taylor to his bedroom, we conclude that any evidence that was obtained by the police as a result of his arrest was illegally obtained and should have been suppressed. We have examined the record of this case and have concluded that the admission into evidence of the illegally seized items of evidence was not harmless error.[11]

The judgment of conviction is therefore REVERSED.

---

**9.** This potential abuse of an arrest warrant led to the court's decision in *Steagald v. United States*, 451 U.S. 204, 215, 101 S.Ct. 1642, 1649, 68 L.Ed. 38, 47 (1981). The court pointed out that if an arrest warrant alone could be used to justify a search, "[a]rmed solely with an arrest warrant for a single person, the police could search all the homes of that individual's friends and acquaintances." The solution of the court was to require a search warrant for the search for a person for whom an arrest warrant existed if that search was made in the residence of a third party. We express no opinion on the retroactivity of the *Steagald* decision.

**10.** Art. 1 § 14 of the Alaska Constitution reads as follows:

The right of the people to be secure in their persons, houses and other property, papers, and effects, against unreasonable searches and seizures, shall not be violated. No warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

**11.** *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 711 (1967); *Dixon v. State*, 605 P.2d 882 (Alaska 1980).