David **EARLEY**, Appellant,

v.

**STATE** of Alaska, Appellee.

No. A–2784.

Court of Appeals of Alaska.

April 6, 1990.

---

Walter Share, Seattle, Wash., and William P. Bryson, Anchorage, for appellant.

Nancy R. Simel, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Douglas B. Baily, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

SINGLETON, Judge.

David Earley pled no contest and was convicted of misconduct involving a controlled substance in the fourth degree—marijuana—a class C felony, in violation of AS 11.71.040(a)(3)(F), and disorderly conduct, a class B misdemeanor, in violation of AS 11.61.110(a)(1). When Earley changed his plea to no contest, he reserved his right to appeal the denial of a suppression motion in accordance with *Oveson v. Anchorage*, 574 P.2d 801, 803 n. 4 (Alaska 1978) and *Cooksey v. State*, 524 P.2d 1251 (Alaska 1974). We affirm in part and reverse in part.

Earley first argues that his arrest was unlawful since he was not disorderly and that his right to loudly argue and protest the forcible and warrantless intrusion of the police into his home was protected by the first amendment to the United States Constitution. He further argues that if AS 11.61.110(b), which defines unreasonably loud noise, applies to his case, the statute chills free speech and is overbroad and void for vagueness.[1]

 At approximately 3:15 a.m. on April 24, 1988, police officers responded to a call from Joseph Cook, who lived next to Earley in a duplex. Cook complained about loud noises coming from next door over a protracted period of time. Cook told the officers he heard loud arguing and children running around. Cook told the officers that he had contacted the residents of the apartment next door and asked the occupants to be more quiet and they had ignored him. When the officers investigated, they heard a loud argument between two males coming from Earley's residence.

---

1. Alaska Statute 11.61.110(a), (b), and (c) provides:

 **Disorderly Conduct.** (a) A person commits the crime of disorderly conduct if,

 (1) with intent to disturb the peace and privacy of another not physically on the same premises or with reckless disregard that the conduct is having that effect after being informed that it is having that effect, the person makes unreasonably loud noise;

 . . . .

 (b) As used in this section, "noise" is "unreasonably loud" if, considering the nature

 and purpose of the defendant's conduct and the circumstances known to the defendant, including the nature of the location and the time of day or night, the conduct involves a gross deviation from the standard of conduct that a reasonable person would follow in the same situation. "Noise" does not include speech that is constitutionally protected.

 (c) Disorderly conduct is a class B misdemeanor and is punishable as authorized in AS 12.55 except that a sentence of imprisonment, if imposed, shall be for a definite term of not more than 10 days.

When the officers contacted Earley, he was loud and belligerent. Given the lateness of the hour, the complaints of a citizen informant, including a prior warning to Earley, and Earley's conduct when approached, we find that the officers had probable cause to arrest Earley for disorderly conduct committed in their presence, AS 12.25.030(a)(1), and that the arrest did not violate the first amendment to the United States Constitution. Earley's conduct and attitude when the police approached him support a reasonable belief that he would have continued to disturb the peace of his neighbors unless he had been taken into custody. We further hold that AS 11.61.110(a)(1), as applied to Earley's conduct, is neither vague nor overbroad. *See Summers v. Anchorage,* 589 P.2d 863, 866–67 (Alaska 1979). We therefore affirm Earley's conviction for disorderly conduct.[2]

■ Earley next argues that the officers' search of his kitchen, garage, and apartment ostensibly to protect the officers and to protect children present in the apartment was unreasonable. The fourth amendment to the United States Constitution and article 1, section 14 of the Alaska Constitution bar unreasonable searches and seizures. A warrantless search is *per se* unreasonable unless it falls within an exception to the warrant requirement. *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967); *Deal v. State,* 626 P.2d 1073, 1078 (Alaska 1980);

*Ahkivgak v. State,* 730 P.2d 168, 171 (Alaska App.1986). Alaska recognizes a protective search exception to the warrant requirement. *Murdock v. State,* 664 P.2d 589, 596–97 (Alaska App.1983); *Taylor v. State,* 642 P.2d 1378 (Alaska App.1982).

To satisfy the protective search doctrine, the state must prove that: "(a) the officers must have reasonable cause to believe that their safety is in danger before engaging in such a search, and (b) the search must be narrowly limited to areas where they could find dangerous persons." *Murdock,* 664 P.2d at 596. "To show such reasonable cause to search, the state should 'demonstrate a factual basis for a reasonable belief that additional suspects [beyond those under police control] were present and posed a threat to the safety' of the officers." *Id.* (quoting *State v. Spietz,* 531 P.2d 521, 525 (Alaska 1975)).[3] The state must prove by a preponderance of the evidence that the exception to the warrant requirement existed. *Chilton v. State,* 611 P.2d 53, 55 (Alaska 1980); *Schraff v. State,* 544 P.2d 834, 838 (Alaska 1975).

In reviewing the trial court's decision, we view the evidence in the light most favorable to the state. *See Gray v. State,* 596 P.2d 1154, 1158 n. 18 (Alaska 1979). In this case Earley was arrested and handcuffed on the threshold of his apartment. The officers observed a second man walk across the doorway out of sight. The offi-

**2.** The statute does not regulate the content of speech. It is limited to regulating the time, place, and manner of speech to avoid excessive noise. Such a regulation does not deprive Earley of freedom of speech under the federal constitution. *See Kovacs v. Cooper,* 336 U.S. 77, 69 S.Ct. 448, 93 L.Ed. 513 (1949), *reh'g denied,* 336 U.S. 921, 69 S.Ct. 638, 93 L.Ed. 1083 (1949) (limitation on the use of sound truck loud speaker or amplifier). We see no basis for interpreting our state constitution differently. A statute is not vague merely because a fact finder must determine questions of reasonableness. *Stock v. State,* 526 P.2d 3, 7–13 (Alaska 1974). Having examined AS 11.61.110(a) and (b), we are satisfied that the statute gives reasonable notice of the conduct it prohibits and that the phrase "unreasonably loud noise" as defined is not unconstitutionally vague. The statute provides that "noise" does not include speech that is constitutionally protected. The statute is therefore not overbroad.

Earley also argues that his right to privacy under Alaska Constitution, article 1, section 22 protects his right to loudly argue in his house. However, the right to privacy does not entitle a person to engage in conduct in his home which affects others adversely. *Ravin v. State,* 537 P.2d 494, 504 (Alaska 1975). People do not have a right to argue so loudly in their home that they disturb the sleep of their neighbors.

**3.** In *Maryland v. Buie,* —— U.S. ——, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990), the Supreme Court held that the fourth amendment to the United States Constitution permits a protective sweep in conjunction with an in-home arrest when an officer possesses a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene.

cers also spotted two small children in the apartment. One child was sleeping on the floor and another child was on the couch. Shortly thereafter, the second man, Alvarez, came into the room. The officers suspected that Alvarez was intoxicated. The officers, at this point, searched the apartment thoroughly, ostensibly to ensure that no one was present who could endanger them while they were assuring that Alvarez was a proper person to care for the two children. During the search of the apartment, the police found a substantial quantity of marijuana in the kitchen, some seedlings in an upstairs bedroom, and a marijuana-growing operation in the garage.

 We agree with Earley that under the facts of this case the officers needed only to arrest and handcuff Earley and interrogate Alvarez to determine that he was a proper person to care for the children. This situation did not permit the extensive search undertaken. The protective search exception to the warrant requirement must be strictly limited to situations where a search is necessary for the protection of the police. *Spietz*, 531 P.2d at 525; *Mattern v. State*, 500 P.2d 228, 231 n. 7 (Alaska 1972). As we said in *Taylor:*

> We believe that the fourth amendment allows entry into a residence on the basis of a protective search only under compelling circumstances. Since an argument can frequently be made that when the police are investigating a serious crime, exigent circumstances exist which would allow them to follow a suspect into his home in order to protect themselves, it follows that only in the most serious situations can we allow this justification to be used. To rule otherwise would seriously compromise the special protection which the home has been afforded under the fourth amendment to the United States Constitution and under the Alaska Constitution.

642 P.2d at 1382 (citation and footnote omitted).

**4.** Our disposition of this case makes it unnecessary to address the other issues raised in Ear-

 In this case, the police were not investigating a serious crime. There was nothing to indicate that Earley was guilty of anything but disorderly conduct, a class B misdemeanor. Nor was there anything to suggest that Alvarez, while possibly intoxicated, was in any way dangerous. The police certainly had the right to question Alvarez briefly to ensure that his children were in proper hands, but there is nothing in the facts of this case that warranted a search of Earley's entire residence. There were no specific and articulable facts which would have warranted a reasonable belief that an armed and dangerous person was concealed in the kitchen, upstairs bedroom, or garage. Consequently, the trial court erred in denying Earley's motion to suppress the marijuana found in the kitchen, the upstairs bedroom, and in the garage.

The judgment of the superior court is AFFIRMED in part and REVERSED in part.[4]