**Michael W. HASKINS, Appellant,**

v.

**MUNICIPALITY OF ANCHORAGE, Appellee.**

**No. A–7435.**

Court of Appeals of Alaska.

May 4, 2001.

Robin L. Koutchak, Anchorage, for Appellant.

Carmen E. ClarkWeeks and John E. McConnaughy, III, Assistant Municipal Prosecutors, and Mary K. Hughes and William A. Greene, Municipal Attorneys, Anchorage, for Appellee.

Before COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

*OPINION*

MANNHEIMER, Judge.

On the evening of January 22, 1999, two Anchorage police officers were on their way

home at the end of their shift when they heard their dispatcher report a hit-and-run. The two officers were close to the location of the accident, so they drove to the scene. When they arrived to investigate, witnesses told one of the officers that the suspect vehicle, a Chevrolet Suburban, had just pulled into a driveway.

The officers discovered that this was the driveway of Michael W. Haskins's house. When the two officers knocked on the door of the Haskins residence, they were met by his wife. One of the officers, James Triplett, had attended high school with Ms. Haskins. Triplett told her about the hit-and-run, and he asked her if she had been driving the Suburban. Ms. Haskins told Triplett that she had not been driving, but she indicated that her husband had just arrived home.

Triplett then asked if he and his fellow officer could talk to Haskins. Ms. Haskins told the officers to come into the entryway of their split-level home. She said that her husband was downstairs, and she started down the stairs. Triplett and his fellow officer followed her. The officers found Haskins in a downstairs bedroom. Based on Haskins's statements to the officers, based on Haskins's physical condition, and based also on the officers' observations of Haskins's vehicle, the officers arrested Haskins and charged him with driving while intoxicated.

Haskins asked the district court to suppress all of the Municipality's evidence stemming from the officers' entry into his home. Haskins conceded that his wife had invited the officers inside, but he claimed that the officers exceeded the scope of that consent by coming downstairs. District Court Judge James N. Wanamaker held an evidentiary hearing into this matter, and he ultimately denied the suppression motion. Haskins then entered a *Cooksey* plea [1], reserving the right to pursue the suppression issue on appeal.

When we conducted our initial review of this case, we realized that Judge Wanamaker had failed to resolve a material conflict in the testimony. As already explained, Haskins conceded that his wife gave the officers permission to enter the front door. The Municipality argued that Ms. Haskins then implicitly invited the officers to follow her downstairs—by turning around, proceeding down the stairs, and allowing the officers to follow her, knowing that they had come to interview her husband. But in her testimony, Ms. Haskins declared that she expressly told the officers to wait in the entryway while she went to get her husband.

Because we believed that proper resolution of the suppression motion might turn on this disputed factual issue, we directed Judge Wanamaker to make supplemental findings. See Criminal Rule 12(d).[2]

In his supplemental findings, Judge Wanamaker found that Ms. Haskins invited the two officers to come through the door and into the entryway, out of the cold, but then she directed them to go upstairs while she went downstairs to fetch her husband. Judge Wanamaker concluded that, although the officers initially began to go upstairs, they then "reversed their course and came back down to the landing and [then] followed Mrs. Haskins into the basement."

Judge Wanamaker concluded that the two officers "realized [that they] were not invited into the basement", but they decided to go downstairs anyway so that they could keep an eye on Ms. Haskins (and ultimately, Haskins himself) as a safety precaution. The judge further found that the officers positioned themselves far enough behind Ms. Haskins that she was not aware that they were following her as she descended the stairs.

■ Based on Judge Wanamaker's supplemental findings, we conclude that the officers' entry into the basement of the Haskins residence can not be justified as a consensual search. Even though Ms. Haskins knew that the police had come to speak to her husband, she only gave the officers permission to come in and wait while she fetched him. That

1. *See Cooksey v. State*, 524 P.2d 1251, 1255–57 (Alaska 1974).

2. The relevant portion of Rule 12(d) states, "[When] factual issues are involved in determining a motion to suppress evidence, the court shall state its essential findings on the record."

limited consent constituted the boundary of the officers' freedom within the house. According to Judge Wanamaker's supplemental findings, Ms. Haskins did not give the officers permission to follow her into the interior spaces of the residence or to otherwise roam the house in search of her husband. The fact that Ms. Haskins failed to protest when the officers ignored her wishes and followed her into the downstairs portion of the house does not constitute the affirmative act of consent that the Fourth Amendment requires.[3]

██ In its supplemental brief, the Municipality contends that the officers' warrantless intrusion into the residence can be justified on the ground of officer safety. The Municipality argues that once the officers were invited into the house, they were justified in following Ms. Haskins in order to maintain surveillance of her and of her husband— indeed, surveillance of all areas of the house from which the officers might be attacked. The Municipality urges us to remand this case to Judge Wanamaker yet again, so that the judge can make findings on the question of whether the officers' intrusion might be justified as a protective search.

We refuse the Municipality's request for another remand because we are convinced that, as a matter of law, the facts of this case would not support a protective search. We rejected essentially the same argument in *Taylor v. State.*[4]

In *Taylor*, two police officers were investigating an armed robbery. Their suspect was named Ernest Taylor. The officers identified a house where Taylor might be hiding, and they knocked on the door. When a man answered, the officers announced themselves and asked the man who he was. The man identified himself as David Taylor. When the officers asked David Taylor for identification, he replied that his identification was in the bedroom. As David Taylor started to go to the bedroom, the officers asked if they could come in. Taylor said yes. The two

officers entered the apartment, but then one of them followed David Taylor down the hall to the back bedroom. As the officer followed David Taylor down the hall, he observed Ernest Taylor attempting to hide in another bedroom. Ernest Taylor was then arrested, and incriminating evidence was found in his possession.[5]

The trial judge concluded that, while David Taylor might have consented to the officers' entry into the apartment, the State had failed to prove that David Taylor consented to having one of the officers follow him to the bedroom. Thus, the trial judge concluded, that intrusion could not be justified under a consent theory. However, the trial judge upheld the legality of the intrusion under the rationale of officer protection. The judge ruled that it was reasonable for the officers to protect themselves by having one of them follow David Taylor down the hall, since the officers had reason to believe that Taylor might be sheltering (or might be the accomplice of) Ernest Taylor, a suspected armed robber.[6]

██ We rejected this rationale and held that the facts of the case could not support a search for protective purposes:

[While w]e conclude that the facts here present a close case, we do not find that the objective facts known to the police were sufficient to justify the police intrusion into the home. Police frequently are called upon to go to residences that may harbor people who are suspected of serious crimes. We believe that the fourth amendment allows entry into a residence on the basis of a protective search only under compelling circumstances. Since an argument can frequently be made that[,] when the police are investigating a serious crime, exigent circumstances exist which would allow them to follow a suspect into his home in order to protect themselves, it follows that only in the most serious situations can we allow this justification to be

---

3. *See Schaffer v. State,* 988 P.2d 610, 615–16 (Alaska App.1999) (even a person's express assent to a search may not be the affirmative, voluntary consent required by the Fourth Amendment).

4. 642 P.2d 1378 (Alaska App.1982).

5. *See id.* at 1380.

6. *See id.* at 1381.

used. *See e.g. Gallmeyer v. State*, 640 P.2d 837 (Alaska App.1982). To rule otherwise would seriously compromise the special protection which the home has been afforded under the fourth amendment of the United States Constitution and under the Alaska Constitution. We therefore reject the argument that the protective search exception justifies the entry into the residence and the act of following David Taylor to his bedroom.

*Taylor*, 642 P.2d at 1382 (footnote omitted).

The facts of Haskins's case are even less supportive of a protective search than the facts of *Taylor*. In *Taylor*, at least, the police could justifiably say that their suspect was believed to be armed and dangerous. The Municipality makes no such claim here, nor would the record support such a claim. Rather, the Municipality broadly argues that *whenever* the police obtain permission to step inside a residence to investigate a crime or question a suspect, they are entitled to make a sweep of the house for their own protection. We rejected this argument in *Taylor*, and we re-affirm that decision here.

 Under the Municipality's proposed rule, all homeowners who consent to have a police officer enter their front door would effectively be consenting to a search of every room in their home. As we stated in *Taylor*, such a rule "would seriously compromise the special protection which the home has been afforded under ... the United States Constitution and under the Alaska Constitution."[7]

Although a warrantless protective search may sometimes be justified, we will uphold such a search "only in the most serious situations".[8] Haskins's case does not present one of those situations.

We therefore reject the Municipality's proposal to remand this case to Judge Wanamaker for a ruling on whether the officers' actions might be justified as a protective search. Under the facts of this case, we rule as a matter of law that the officers' actions can not be justified under this rationale.

Because the officers did not have consent to enter the downstairs area of the Haskins residence, and because their entry can not be justified as a protective search, the officers violated Haskins's rights under the search and seizure clauses of the federal and state constitutions, and the district court should have suppressed all evidence arising from that violation.

When Haskins entered his *Cooksey* plea, the Municipality agreed that the DWI charge against him would have to be dismissed if Haskins showed that he was entitled to suppression of this evidence. Accordingly, the judgement of the district court is REVERSED.

---

7.  *Id.* at 1382.

8.  *Id.*